433 P.2d 625

**STATE of Arizona, Appellee,**

**v.**

**Patrick Daniel MALONEY, Appellant.**

**No. 1611.**

Supreme Court of Arizona.

In Banc.

Nov. 16, 1967.

Darrell F. Smith, Atty. Gen., Walter O. Holm, Asst. Atty. Gen., for appellee.

Marshall W. Haislip, Phoenix, for appellant.

BERNSTEIN, Chief Justice.

This case comes to us from the Superior Court of Maricopa County after we remanded it to that court for the limited purpose of a hearing on the voluntariness of certain inculpatory statements made by the defendant. See State v. Maloney, 101 Ariz. 111, 416 P.2d 544 (1966). On remand, after holding the required hearing, the trial court found that these statements were uttered voluntarily. We delayed our determination of this case pending the recent decision of the Supreme Court of the United States in Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (May 15, 1967).

The pertinent facts on this appeal follow. The defendant was convicted by a jury of the dual murders of his mother and stepfather. At the time of this act the defend-ant was just under 16 years old. After being apprehended by the police on September 22, 1964, he was taken to the Juvenile Detention Home and later removed to the Phoenix Police Department for questioning. From September 22, 1964 until October 7, 1964 the defendant was under the jurisdiction of the juvenile court.[1] On October 7, 1964, after a hearing on the matter, the Honorable Jack D. H. Hays made an order in which he refused to suspend criminal prosecution and remanded the defendant to the appropriate authorities to be tried as an adult.

It is crucial to note, as counsel for defendant aptly points out, that the inculpatory statements made by the defendant were the result of an interrogation by the Phoenix Police on September 23, 1964, a time when the defendant was still within the jurisdiction of the juvenile court.

The interrogation in question was conducted by Officers Copeland and McMillen of the Phoenix Police Department. Philip Helmkay, a juvenile probation officer, was present at all times during the questioning, and took an active part in the interrogation. The record shows, and the trial court so found, that before the questioning began Officer McMillen advised the defendant of his right to counsel and his right to remain silent. Shortly thereafter, the probation officer asked the defendant if he thoroughly understood his rights. The defendant answered in the affirmative. After being advised that he need not speak without counsel being present, and that what he did say might be used against him, he nevertheless proceeded to make certain incriminating statements. The questioning lasted approximately 1½ hours and was conducted around 10:30 or 11:00 A.M., a normal time of the day.

---

1. Ariz.Const. art. 6, § 15, A.R.S. (1960) provides:

"The superior court shall have exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of crime, under the age of eighteen years. The judges shall hold examinations in chambers for all such children concerning whom proceedings are brought, in advance of any criminal prosecution of such children, and may, in their discretion, suspend criminal prosecution of such children. The powers of the judges to control such children shall be as provided by law."

From the record we find no physical or mental coercion was used during this interrogation.

At the trial the police and juvenile probation officers testified to the inculpatory statements made by the defendant during their interrogation. The issue before this court is whether these statements should be excluded.

As we noted above, the defendant was within the jurisdiction of the juvenile court at the time he made the inculpatory statements. This raises the interesting question of whether these statements can be later used against the child in a regular criminal trial after the juvenile court refuses to suspend criminal prosecution.

The leading case in this area is Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161 (1961). Judge Bazelon, writing for the majority and dealing with a similar set of facts, stated:

"Aside from the requirements of expressly applicable statutes, the principles of 'fundamental fairness' govern in fashioning procedures and remedies to serve the best interests of the child. It would offend these principles to allow admissions made by the child in the non-criminal and non-punitive setting of juvenile proceedings to be used later for the purpose of securing his criminal conviction and punishment. Such a practice would be tantamount to a breach of faith with the child, since he cannot be charged with knowledge of either his privilege against self-incrimination or *the Juvenile Court's power to waive its jurisdiction and subject him to criminal penalties.*" 295 F.2d at 163. (Emphasis added, and footnotes omitted.)

In the case at bar the defendant was advised of his privilege against self-incrimination. However, there is no evidence to show that he had any idea that he might be tried as an adult and be subject to criminal sanctions. Indeed, the probation officer's presence could easily have led a child to believe he was being treated as a juvenile. Moreover, the fact that the defendant had previous contact with this particular probation officer only strengthens our conclusion. More important, however, as the Supreme Court of the United States noted in the recent Gault decision, probation officers,

"* * * initiate proceedings and file petitions which they verify * * * alleging the delinquency of the child; and they testify * * * against the child. * * * *The probation officer cannot act as counsel for the child.* His role in the adjudicatory hearing, by statute and in fact, is as arresting officer and witness against the child." Application of Gault, 387 U.S. at 36, 87 S.Ct. at 1448. (Emphasis added.) See 2 A.R.S. § 8–204, subsec. C, which in effect makes a probation officer a police officer.

Consequently, this child was in a position where his rights were wholly unprotected.

Yet the basis for the result in Harling was not merely the fact that a child could not be charged with knowledge of his right to remain silent and the juvenile court's power to waive jurisdiction. Rather the court had a more fundamental reason for excluding this evidence. They state:

"Moreover, if admissions obtained in juvenile proceedings *before* waiver of jurisdiction may be introduced in an adult proceeding *after* waiver, the juvenile proceedings are made to serve as an adjunct to and part of the adult criminal process. This would destroy the Juvenile Court's *parens patriae* relation to the child and would violate the non-criminal philosophy which underlies the Juvenile Court Act." 295 F.2d at 164. (Emphasis in original.)

In Harling the court was deeply concerned with the necessity for a separation between the juvenile and criminal process. In order to effectuate this policy they prohibit the use of admissions made by a child while he is within the jurisdiction of the juvenile court to be used in a subsequent criminal proceeding. See in accord, Francois v. State, 188 So.2d 7 (Fla.App.1966).

Perhaps the most meaningful language in the above quotation is the court's use of the phrase "juvenile proceedings". We think a fair interpretation of this language is that an admission made to the police before waiver by the juvenile court is part of the "juvenile proceedings".

In Arizona, as in many states,[2] there is a statutory provision that has a direct bearing on the issue before us. 2 A.R.S. § 8–228, subsec. B provides:

> "The disposition of a child or of evidence given in the juvenile court shall not be admissible as evidence against the child in any proceeding in another court, nor shall such disposition or evidence disqualify a child in a civil service application, examination or appointment."

An interpretation of this statute requires an understanding of the procedures employed by the juvenile court. Crucial to our discussion is the manner in which that court gathers evidence. For example, one of the most valuable tools of the juvenile court is the prehearing report. It usually includes a summary of the situation, a history of the family and the child, and a recommendation of disposition. Oftentimes it will include confidential information from people who know the child. See Molloy, Juvenile Court —A Labyrinth of Confusion for the Lawyer, 4 Ariz.L.Rev. 1, 9 (1962).

■ As we see it, an inculpatory statement obtained by the police while the child is within the jurisdiction of the juvenile court is part of the evidence gathering function of that court. The fact that such evidence was never offered to the juvenile court in a hearing to adjudicate whether the child is delinquent does not alter the fact that such an inculpatory statement is evidence. In addition, as we noted above,

the court in Harling impliedly stated that admissions obtained by the police while the child is within the jurisdiction of the juvenile court is evidence gathered in the "juvenile proceedings".

Indeed, in State v. Shaw, 93 Ariz. 40, 48, 378 P.2d 487, 492, (1963), we recognized the significance of the problems that could arise in this area when we quoted a recognized authority in this field.

> "Because of the child's presumed immaturity, special safeguards should be thrown around a police officer's interview with a child in investigating a delinquent act. In certain situations, depending on the age of the child and the act committed, waiver to criminal court may be a possibility. Moreover at the time of the interview, it is not known whether or not the court specializing in children's cases will retain jurisdiction over the case if a petition is filed, or will waive its jurisdiction and permit the child to be tried in a criminal court. Therefore, it cannot always be assumed that the police interview will lead only to a noncriminal proceeding.

> "Before being interviewed, the child and his parents should be informed of his right to have legal counsel present and to refuse to answer questions if he should so decide. In cases where waiver is possible, he should also be cautioned that if he answers, his answers may be used not only before the specialized court but possibly in a criminal court. Where a child has been questioned alone by a police officer, without having been given an opportunity to secure the presence of his parents, guardian, or counsel, his statements during such interview should be presumed to have been induced either

2. For a compilation of statutes similar to ours see 1 Wigmore, Evidence § 196(c) (3d ed. 1940). Of particular interest are the statutory provisions of New York, Alabama, and South Carolina. For example the New York statute provides in part:

"Neither the fact that a person was before the family court under this arti-

cle for a hearing *nor any confession, admission or statement made by him* to the court or *to any officer thereof in any stage of the proceeding is admissible as evidence against him or his interests in any other court.*" N.Y. Family Court Act, § 783. (Emphasis added.)

by the child's immaturity or by the idea that they would be used only in the specialized court and they should, therefore, unless the presumption is overcome, be excluded from admission before a criminal court in which the child may be a defendant." Glueck, The Problem of Delinquency p. 539 (1959) (quoting from a publication of the U.S. Government Children's Bureau.)

 One of the underlying policies of the Juvenile Court Act is to separate the juvenile process from the criminal procedure. Such a policy is necessary to enhance the rehabilitative program of the juvenile court. We hold as a matter of "fundamental fairness", and because § 8–228, subsec. B, 2 A.R.S., prohibits the use of such evidence, that inculpatory statements made by a child while under the jurisdiction of the juvenile court and before that court waives its jurisdiction, cannot later be used against the child in a subsequent criminal proceeding unless he and his parents are advised before questioning not only of the child's right to counsel and privilege against self-incrimination, but also of the possibility that he may be remanded to be tried as an adult.

Of course, the police cannot advise parents if they do not exist. In the case before us the defendant stood accused of killing his mother and stepfather. Yet the defendant's natural father was alive and might have been contacted. Indeed, he was present at the hearing to determine whether the child would be remanded to be tried as an adult. Without notifying this boy's natural father of his child's rights any statement made by the child while under the jurisdiction of the juvenile court is inadmissible in a subsequent criminal proceeding. However, it is crucial to note that where the interests of the parent and child are in conflict, such as in the case of a divorce where the parent shows no interest in the child, or where the child is neglected by his parents it is the court's duty to appoint an attorney to protect the child's best interests. If there are no par-

ents the court is under the same duty to appoint counsel. See Application of Gault, 99 Ariz. 181, 191, 407 P.2d 760, 767 (1965); Marsden v. Commonwealth, 227 N.E.2d 1 (Mass.1967).

In the instant case we need not deal with the trustworthiness of the inculpatory statements in question since our holding requires a new trial in any event.

Judgment reversed and remanded.

McFARLAND, Vice C. J., and STRUCK-MEYER, UDALL and LOCKWOOD, JJ., concur.