THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* CHARLES E. PRUDE *et al.*, Defendants-Appellees.

(No. 74-185;

Fifth District—September 15, 1975.

Robert H. Rice, State's Attorney, of Belleville (Clyde L. Kuehn, Assistant State's Attorney, of counsel), for appellant.

Stephen P. Hurley and Ann L. Carr, both of State Appellate Defender's Office, of Mt. Vernon, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the State, pursuant to Supreme Court Rule 604 (Ill. Rev. Stat. 1973, ch. 110A, par. 604), from an order entered by the circuit court of St. Clair County granting the defendants', Charles E. Prude's and Maurice C. McGuire's, motions to suppress evidence.

On January 7, 1974, defendant Prude and Theodore Wright were arrested between 6 and 6:30 p.m. at Johnny Wong's restaurant as a result of the shooting of Johnny Wong. Defendant Prude was 16 years old at the time of his arrest. The two were taken to a police station, booked by a juvenile officer, and taken upstairs to the investigative section where they reviewed mug shots for over an hour. The two youths were then questioned by the police; first together and then separately. Defendant Prude was questioned alone for 15 minutes or half an hour the first time and then for two hours the second time. About 10 or 10:30 p.m. police officers went to get two more juveniles, Richard Cooper and defendant McQuire, whom defendant Prude had implicated. It is unclear whether defendant Prude was ever put in a cell.

Sometime between 11 p.m. January 17, 1974, and 2 a.m. January 18, 1974, defendant Prude, after being read the *Miranda* warnings and after signing a juvenile waiver form, gave the police an inculpatory statement, which was subsequently typed up and signed by defendant Prude. The juvenile waiver form included the following paragraphs:

"2. Any statement that I make will be used against me.

3. Should the Juvenile Court find that I have committed the offense I am alleged to have committed, the Court may, among other things, send me [to] a Correctional school, place me in a public or private institution, place me with another guardian, or supervise me on probation for an indefinite period of time."

While it is undisputed that the police contacted defendant Prude's mother, conflicting testimony was presented concerning precisely what transpired during such communications. According to Mrs. Prude she called the juvenile section and was advised that her son was being held as a witness to a shooting; she was not told her son was a suspect. She further testified that she didn't receive any calls from the police until 2 a.m. when Officer McCaskill called "so that she would not worry." She was allegedly told her son would be home in the morning. When her son failed to return the following morning Mrs. Prude secured permission to leave work and go to the police station. Mrs. Prude testified that upon her arrival at the police station she first learned that her son was a murder suspect.

Defendant Prude was not told by the police or the juvenile officers that he could be certified as an adult and tried for murder, nor was he told that Wong had died. Johnny Wong had died 20 minutes after arriving at the hospital, hours before defendant Prude tendered his inculpatory statement.

Defendant McGuire was arrested at his home between 10 and 11 p.m. on January 17, 1974. Defendant McGuire was 16 years old at the time of his arrest. McGuire's parents were told that McGuire had been involved in a shooting. There was conflicting testimony presented whether defendant McGuire was threatened on his way to the police station. Defendant McGuire was booked in at 11:30 p.m. Defendant McGuire was advised of the *Miranda* warnings and he signed a juvenile waiver form, including paragraphs two and three quoted above.

Defendant McGuire testified that he understood that he had the right to remain silent, but he did not understand the rest, even though he indicated to the officers that he did understand. He further testified that he did not remember being told that he had a right to counsel or that he could stop the interrogations at any time and get counsel. He allegedly signed the inculpatory statement because he felt threatened.

Defendant McGuire was never told that Wong had died; that he could be certified and tried as an adult; nor that he was being held for murder.

On February 13, 1974, the defendants were certified to be tried as adults. On March 7, 1974, they were indicted for murder. After being arraigned on March 26, they filed the motions to suppress which were subsequently granted by the trial court. The trial court specifically denied all of the allegations contained in the defendants' motions to suppress except paragraph five, which alleged that the failure to advise the defendants that they could be certified and tried as adults denied them their rights to due process as guaranteed by the fifth amendment of the constitution.

The State contends that contrary to the ruling of the trial court "the Constitution does not require an admonition to juvenile offenders prior to questioning that they could be certified as adults and treated as adults for purposes of criminal prosecution." In response to the State's argument in support of the above contention, and in support of the trial court's ruling, the defendants contend that the "waivers of their fifth amendment right to remain silent were not understandingly and intelligently made because they were not advised that criminal consequences could result from such waivers."

While our research fails to reveal any Illinois authority directly on point, we have discovered conflicting views expressed in opinions emanating from other jurisdictions. From review of these authorities there appear to be basically four different approaches to the problem. The first approach is that the *Miranda* warnings are sufficient and that the voluntariness of a confession is determined by the "totality of the circumstances" notwithstanding the fact that a juvenile is involved.[1] A second approach is that a confession by a juvenile is to be scrutinized to ensure that the juvenile procedures did not encourage the confession when, if the juvenile had known that criminal prosecution as an adult could result, he might have exercised his right to remain silent.[2] A third

---

[1] Implied in this approach is that juveniles need not be aware of the possibility of criminal consequences. This appears to be the approach followed in Tennessee. (See *Mitchell v. State* (1971), 3 Tenn. Crim. App. 494, 464 S.W.2d 307, *O'Neil v. State* (1970), 2 Tenn. Crim. App. 518, 455 S.W.2d 597.) While the court did not specifically address the need for an admonishment concerning the possibility of certification in *O'Neil*, it held that the admonitions given were sufficient notwithstanding the fact that the possibility of certification was not included in such admonitions, nor was there any inquiry into whether the juvenile was aware of such a possibility. A like analysis yielded a similar result in *Mitchell*. While this approach also appears to be followed in California, *People v. Lara* (1967), 67 Cal. 2d 365, 432 P.2d 202, *cert. denied*, 392 U.S. 945, the California Supreme Court only touched on the issue of certification in its *Lara* opinion. Moreover, the conclusion reached in *Lara* was tempered by the court's approval of an Oregon decision, *State v. Gullings* (1966), 244 Ore. 173, 416 P.2d 311, which included its quotation of the following passage therefrom, " ' * * * So long as information is available which meets constitutional criminal due process standards *and which was not secured through the close relationship between court worker and child,* the safety and security of the law-abiding public requires its use in adult criminal proceedings.' " (Emphasis added.) 432 P.2d 202, 219.

[2] This approach was first adopted by the Oregon Supreme Court in its decision in *State v. Gullings* (1966), 244 Ore. 173, 416 P.2d 311, wherein the court stated, "Presuming that federal constitutional Fifth and Sixth Amendment rights are granted, we believe that an absolute prohibition is not required *so long as it is made clear to the juvenile that criminal responsibility can result and that the questioning authorities are not operating as his friends but as his adversaries.*" (Emphasis added.) (416 P.2d 311, 313.) The Minnesota Supreme Court, after reviewing several of the approaches to the problem, decided, in *State v. Loyd* (1973), 297 Minn. 442, 212 N.W.2d 671, to follow the rule expressed by the Oregon court in *Gullings*. Our reading of *Loyd*,

approach is that a juvenile must be advised of the possibility that he could be certified as an adult before a confession may be used in any subsequent criminal prosecution.[3] And, a fourth approach is that no confession given while the juvenile is under the jurisdiction of the juvenile court may be admitted in a subsequent criminal prosecution.[4]

---

however, reveals that the Minnesota court adopted an approach somewhat less restrictive than did the Oregon court in *Gullings*. The following language leads us to this conclusion, "While all of the facts and circumstances should be examined in determining whether a juvenile has intelligently waived those rights, it is important that the juvenile is questioned in an adversary setting and not in the confidential atmosphere of the juvenile court process; otherwise he may not realize that criminal responsibility might result. Awareness of potential criminal responsibility may often be imputed to a juvenile when the police are conducting the interrogation. Of course, the safest method the interrogating authority can pursue is to specifically advise a juvenile that criminal prosecution as an adult could result whenever such prosecution is possible." (212 N.W.2d 671, 677.) On October 14, 1974, the Supreme Court of Missouri handed down a trilogy of decisions which clearly adopted the *Gullings* approach. (See *State v. Rone* (Mo. 1974), 515 S.W.2d 438; *State v. Wright* (Mo. 1974), 515 S.W.2d 421; *State v. McMillian* (Mo. 1974), 514 S.W.2d 528.) Justice Seiler's dissents in *Wright*, 515 S.W.2d 421, 433-38, *Rone*, 515 S.W.2d 438, 442-44, and *McMillian*, 514 S.W.2d 523, 531-32, make it clear that while the majority held that a "juvenile's potential criminal responsibility be made clear so that he will 'realize,' be 'aware' of the possible result of any statement he makes" (*State v. McMillian*, 514 S.W.2d 528, 530), there was no requirement that the juvenile be warned specifically that he could be certified as an adult and face criminal prosecution. While the language employed by the Washington Supreme Court in *State v. Prater* (1970), 77 Wash. 2d 526, 463 P.2d 640, is not subjected to precise categorization, since the court ostensibly followed the *Gullings* decision, we believe it is fair to consider Washington as following the *Gullings* approach. In summary the *Gullings* approach is followed, to a greater or lesser extent, by the courts in Oregon, Minnesota, Missouri, and Washington.

[3] This approach has been adopted in Arizona. Arizona first adopted this approach in *State v. Maloney* (1967), 102 Ariz. 495, 433 P.2d 625, wherein its supreme court held that "fundamental fairness * * * prohibits the use of * * * inculpatory statements made by a child while under the jurisdiction of the juvenile court and before that court waives its jurisdiction * * * in a subsequent criminal proceeding unless he and his parents are advised before questioning not only of the child's right to counsel and privilege against self-incrimination, but also of the possibility that he may be remanded to be tried as an adult." (433 P.2d 625, 629.) Followed, *State v. Councilman* (1969), 105 Ariz. 145, 460 P.2d 640; modified, *State v. Hardy* (1971), 107 Ariz. 583, 491 P.2d 17, 18, which held that notification of a juvenile's parents "is only *one* of the elements to be considered * * * in determining that the statement was voluntary and the child intelligently comprehended his rights."

[4] This approach was adopted by the District of Columbia Circuit Court of Appeals in *Harling v. United States* (D.C. Cir. 1961), 295 F.2d 161. The court held that [i]t would offend these principles (of fundamental fairness) to allow admissions made by the child in the non-criminal and non-punitive setting of juvenile proceedings to be used later for the purpose of securing his criminal conviction and punishment." (295 F.2d 161, 163.) Relying upon principles of fundamental fairness, the court reasoned that it would be a breach of faith, and violative of the *parens patriae* function of the juvenile court, to allow prereferral confessions to be admitted in subsequent criminal proceedings. While the *Harling* decision has often been a focal point in the discussion of the requirement of a warning about the possibility of

■■ In a recent decision by our supreme court, *People v. Simmons*, 60 Ill.2d 173, 179, 326 N.E.2d 383, 386, the court commenced its review of the admissibility of a juvenile's confession by stating:

"Whether a statement was voluntarily given must be determined from 'the totality of the circumstances' (*People v. Prim*, 53 Ill.2d 62, 70) and consideration must be given to 'both the characteristics of the accused and the details of the interrogation.' *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 36 L.Ed.2d 854, 862, 93 S.Ct. 2041, 2047."

The court then quoted the following passage from *In re Gault*, 387 U.S. 1, 55, 18 L.Ed.2d 527, 561, 87 S.Ct. 1428, 1458:

"\* \* \* If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair."

Following this passage the court quoted some of the language it had employed in *People v. Turner*, 56 Ill.2d 201, 205, 306 N.E.2d 27, 30, wherein it stated, "Although there is no doubt that the defendant was advised of his rights as mandated by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 694, 86 S.Ct. 1602, the question presented by this record is whether he knowingly waived those rights."

■■ While the supreme court's decision in *Simmons* did not address the problem of certification, the foregoing principles, when considered collectively, lead us to the conclusion that Illinois law mandates that we adopt the approach first advanced by the Oregon Supreme Court in *State v. Gullings* (1966), 244 Ore. 173, 416 P.2d 311. Under this approach the confession by a juvenile is scrutinized to ensure that the juvenile procedures did not encourage the confession when, if the juvenile had known that criminal prosecution as an adult could result, he might have exercised his right to remain silent. While we are not unmindful of the pragmatic advantages of the objective standards included in the approach adopted by the Arizona courts,[5] we believe that adoption of that approach is best left to the supreme court, or the legislature. On the other

---

certification by state courts, it has proven to be of little precedential and persuasive value in such decisions. Nevertheless, several legislatures have seen fit to prohibit the admission of a juvenile's inculpatory statement *made in the informal and non-punitive atmosphere of the juvenile court* in any subsequent criminal prosecution. (*E.g.*, N.D. Cent. Code § 27—20—33(2) (1974); Minn. Stat. Ann. § 260.211(1) (1971); Colo. Rev. Stat. Ann. § 22—8—1(3)(b) (1963).) See generally 1 J. Wigmore, Evidence § 163(3) (3rd ed. Supp. 1972).

[5] See footnote 3.

hand, we do not believe that our adherence to the "totality of the circumstances" test dictates that we hold that *Miranda* warnings, alone, are sufficient to establish a waiver of the right to remain silent. In fact, our supreme court expressly rejected that view in *People v. Turner*, 56 Ill.2d 201, 306 N.E.2d 27.

Instead, we believe that review of a juvenile's confession requires a close scrutiny of the "totality of the circumstances" to determine not only if the confession was tendered voluntarily (free from inducement and coercion), but to determine that the rights waived thereby were knowingly and intelligently waived. Although it would be unrealistic to expect each juvenile court officer and each police officer to explain all of the legal ramifications which might result from a juvenile's waiver of his right to remain silent, a minimum requirement should be that a juvenile be or be made aware of the possibility of future criminal prosecution. This is particularly true when, as in the instant case, a juvenile in custody is given a waiver form which purports to set forth the possible sanctions which could result from an inculpatory statement and yet merely sets forth the sanctions that the juvenile court could impose.

Each defendant in the instant case was given a waiver form which included the following paragraphs,

"2. Any statement that I make will be used against me.

3. Should the Juvenile Court find that I have committed the offense I am alleged to have committed, the Court may, among other things, send me [to] a Correctional school, place me in a public or private institution, place me with another guardian, or supervise me on probation for an indefinite period of time."

Unless a juvenile advised in the above manner is made aware, or it is demonstrated that such juvenile was aware, that the phrase "among other things" includes the possibility he may be certified as an adult and subjected to criminal prosecution, we believe that such juvenile is incapable of making an intelligent waiver of his right to remain silent.

■■ As stated in various manners by those courts which have followed the *Gullings* approach, there is no requirement that a juvenile be specifically advised of the possibility of certification, albeit this procedure has been recognized as the safest method an interrogating authority can pursue. (*E.g., State v. Loyd* (Minn. 1973), 212 N.W.2d 671.) What is required is either a showing of the juvenile's awareness, for example, by his previous exposure to the criminal justice system, or a showing that the interrogation process clearly conveyed to the juvenile the possibility of subsequent criminal prosecution.

In view of the foregoing conclusions we hold that it was error for the trial court to grant the defendants' motions to suppress solely on the ground that no warning was specifically given the defendants regarding

the possibility of certification. Nevertheless, this conclusion does not, *ipso facto*, require that we reverse the trial court's order granting the defendants' motions to suppress. Instead, it requires that we review the record to determine if the State met the minimum requirements as set forth previously in this opinion.

■■ While the State need not prove the voluntariness of the defendants' statements beyond a reasonable doubt (*Lego v. Twomey*, 404 U.S. 477, 30 L.Ed.2d 618, 92 S.Ct. 619; *People v. Nicholls*, 42 Ill.2d 91, 245 N.E.2d 771), the State has the burden of proving, by the preponderance of the evidence, that the statements made were given knowingly and voluntarily (*People v. Williams*, 131 Ill.App.2d 149, 264 N.E.2d 901; *People v. Jackson*, 41 Ill.2d 102, 242 N.E.2d 160). The State failed to meet such burden in the instant case.

The State failed to present any evidence to establish that the defendants either possessed knowledge of the possibility that they could be certified and tried as adults or that the interrogation process clearly conveyed to the defendants the possibility of subsequent criminal prosecution. Quite the contrary, the State's witnesses repeatedly testified that the defendants were given the "juvenile statement" (waiver), which included only those sanctions which could be imposed by the juvenile court, immediately following the *Miranda* warnings. In fact, the defendants were not told that the victim had died, much less that they could be charged with murder. The interrogating officers testified that they did not advise the defendants of the possibility of certification. And, while testimony in the record alludes to previous juvenile offenses having been committed by the defendants, no record of such offenses appears in the record. Furthermore, there was no attempt, on the part of the State, to show that such previous experience would have made the defendants realize that criminal prosecution was a possible consequence of their statements.

Under these circumstances we hold that the State failed to prove, by a preponderance of the evidence, that the defendants knowingly and intelligently waived their rights to remain silent. Without an intelligent and knowledgeable waiver of the right to remain silent, the defendants' statements were suppressible notwithstanding the trial court's finding that they were tendered "voluntarily," and use of the statements in other than juvenile proceedings is prohibited.

In view of these conclusions we find it unnecessary to reach the other contentions raised by the defendants. And, for reasons expressed herein, we affirm the order of the trial court granting the defendants' motions to suppress.

Order affirmed.

JONES, P. J., and CARTER, J., concur.