## Richmond

## DAVID EDWARD HARRIS V. COMMONWEALTH OF VIRGINIA.

March 4, 1977.

Record No. 760925.

Present, All the Justices.

Edward L. Hogshire (Paxson, Smith, Boyd, Gilliam & Gouldman, P.C., on brief), for plaintiff in error.

Wilburn C. Dibling, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Petitions were filed in the Juvenile and Domestic Relations District Court for Charlottesville charging David Edward Harris with the murder of Egbert R. Brock and the robbery of Michael S. Smith. In due course Harris' case was transferred to the circuit court, where he was indicted and tried as an adult by the court below. Defendant was convicted of murder in the first degree and of robbery and was sentenced to imprisonment for terms of 30 and 20 years, respectively. On this appeal defendant challenges the admissibility of his confession upon the ground that it was taken prior to his certification and transfer by the

juvenile court, and because at the time the *Miranda* warnings were given him he was not advised that he might be tried as an adult.

On June 7, 1975, defendant, having previously been committed by the juvenile court for acts of delinquency, was en route by bus from a juvenile halfway house in Staunton to Beaumont Learning Center, a correctional institution for juveniles near Richmond. When the bus reached Charlottesville Harris decided not to return to Beaumont where he had previously been confined. Harris admitted that after getting off the bus he broke and entered his grandfather's home in Charlottesville and intentionally killed his grandfather by shooting him twice at close range while his victim was asleep. Later on the same day defendant and a friend, using the same shotgun with which Harris shot his grandfather, committed an armed robbery on Michael S. Smith in Smitty's Market in Charlottesville.

The investigating officers testified that they did not attempt to interview Harris at the time of his arrest, made shortly after the robbery occurred, for the reason that defendant then appeared to be under the influence of drugs or alcohol. On the following day defendant was interviewed in an interrogation room at police headquarters concerning the murder and armed robbery. Three Charlottesville police officers conducted the interview which lasted for approximately one hour. Defendant's mother, Alice Washington, was present during the entire interview. At one point, and because of a statement made by defendant, Mrs. Washington broke down and had to leave the room for a short period. The interrogation of defendant was suspended during the time she was absent from the room.

Prior to any questioning, defendant signed a waiver of rights form in which he acknowledged that he was being interviewed in connection with the alleged commission of the crimes of murder and armed robbery. The signature of defendant to the form was witnessed by his mother and the three officers. The form [1], which set forth the *Miranda* warnings, specifically advised defendant that anything he said "can and will be used against you in a court of law". It was testified that defendant signed the form freely and willingly and appeared to understand each and every clause thereof. Defendant's mother, who had a tenth grade education, voiced no objection to his signing the waiver form or to his talking to the police officers.

---

[1] See face page.

"BUREAU OF POLICE
CHARLOTTESVILLE, VIRGINIA

TIME: __10:10 A. M.__

DATE: __06-08-75__

NAME OF SUSPECT OR ACCUSED ____David Edward Harris____
I, AM DETECTIVE ___Det. R.J. Hughes, Sgt. W.H. Bryant, Det. H.L. Marshall___
OF THE CHARLOTTESVILLE, VIRGINIA BUREAU OF POLICE

RIGHTS

1. YOU ARE BEING INTERVIEWED IN CONNECTION WITH THE ALLEGED
   COMMISSION OF THE CRIME OF Murder & Armed Robbery of Smittys Market
2. YOU HAVE THE RIGHT TO REMAIN SILENT.
3. ANYTHING YOU SAY, CAN AND WILL BE USED AGAINST YOU IN A COURT
   OF LAW.
4. YOU HAVE THE RIGHT TO TALK TO A LAWYER AND HAVE HIM PRESENT
   WITH YOU WHILE YOU ARE BEING QUESTIONED.
5. IF YOU CANNOT AFFORD TO HIRE A LAWYER, ONE WILL BE APPOINTED TO
   REPRESENT YOU BEFORE ANY QUESTIONING, IF YOU SO DESIRE.
6. DURING THIS INTERROGATION, I WANT YOU TO FEEL FREE TO STOP
   ANSWERING MY QUESTIONS WHENEVER YOU MAY SO DESIRE.

WAIVER

1. DO YOU UNDERSTAND EACH OF THESE RIGHTS I HAVE EXPLAINED TO
   YOU? Yes.
2. HAVING THESE RIGHTS IN MIND DO YOU WISH TO TALK TO US NOW?
   Yes.

WITNESSES:

s/s R. J. Hughes
s/s Alice Washington
s/s H. L. Marshall
s/s W. H. Bryant"

_____s/s David E. Harris_____
SIGNATURE OF THE SUSPECT OR ACCUSED

The witnesses testified that after defendant signed the form he confessed fully, freely and in detail to the two crimes that he had committed. It is not claimed that any promises, inducements or threats were made to defendant. The officers stated that he was not under the influence of either alcohol or drugs at the time the confession was made but did appear slightly nervous during the interview. At the conclusion of the interview, and after the confession to the crimes had been made, Mrs. Washington advised her son not to sign the written statement until they could consult a lawyer. Harris accordingly declined to sign the statement. Prior to this time no request had been made for an attorney, and there had been no mention made of an attorney by either defendant or his mother.

Harris argues that the voluntariness of his confession is clouded, not by the use of threats or coercion on the part of the police, but because he was laboring under a serious misconception concerning the probable disposition of his case. Defendant now says that he had no expectation that he would be treated as an adult and that the mere warning that his statement could be used against him in "a court of law" was not sufficiently specific to alert a juvenile to the fact that he might be tried as an adult. He says that juveniles, under the *parens patriae* protection of the court, who are charged with criminal violations, are entitled to be advised of their rights. *In Re Gault*, 387 U.S. 1 (1967). In addition, defendant contends that few teenagers have any knowledge of the criminal processes and even those, like defendant, who have been committed to the state as delinquents, are strangers to the adult criminal justice system. He relies upon *State* v. *Maloney*, 102 Ariz. 495, 433 P.2d 625 (1967), where the Arizona Supreme Court held: "As a matter of fundamental fairness", and because of the provisions of a state statute:

> "[I]nculpatory statements made by a child while under the jurisdiction of the juvenile court and before that court waives its jurisdiction, cannot later be used against the child in a subsequent criminal proceeding unless he and his parents are advised before questioning not only of the child's right to counsel and privilege against self-incrimination, but also of the possibility that he may be remanded to be tried as an adult." 102 Ariz. at 499, 433 P.2d at 629.

Defendant contends that Virginia should follow *Maloney* so as to insure adequate protection of Fifth and Sixth Amendment rights for juveniles. However, it appears that Arizona has modified the view it expressed in *Maloney* and now, in determining the admissibility of statements by juveniles, its courts consider "all the circumstances of the taking of the statement". *See State* v. *Mattox*, 113 Ariz. 252, 550 P.2d 630 (1976); *Matter of Pima County, Juv. Act. No. J-47735-1*, 26 Ariz. App. 46, 546 P.2d 23 (1976); *State* v. *Hardy*, 107 Ariz. 583, 491 P.2d 17 (1971).

The *Maloney* view was first adopted in *Harling* v. *United States*, 295 F.2d 161 (D.C. Cir. 1961), when many rights available to adults were not available to juveniles. In *Harling* the juvenile

was not advised of his constitutional rights and was not taken before a magistrate for two weeks. Today, as a result of *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and *In Re Gault*, *supra*, juveniles are fully advised of their *Miranda* rights as was defendant Harris. Furthermore, in Virginia, a juvenile who is taken into immediate custody must be brought before a judge on the next day on which such court sits, or in any event not more than 72 hours after having been taken into custody for a determination "as to legal representation and detention". Code §16.1-173(c).

In light of the fact that juveniles are accorded many of the same rights as their adult counterparts, the majority of jurisdictions have rejected the *Maloney-Harling* approach and hold that if it is apparent from the totality of the circumstances that a criminal prosecution might follow, then a juvenile's confession prior to transfer is admissible.[2] Illustrative of this approach is *State* v. *Loyd*, 297 Minn. 442, 450, 212 N.W.2d 671, 677 (1973), wherein the Supreme Court of Minnesota held:

"A confession by a juvenile is admissible if he has been apprised of his constitutional rights and voluntarily and intelligently waives those rights in making a statement. However, we recognize that the nature of the juvenile system may work to encourage a confession by a juvenile which might otherwise be withheld. While all of the facts and circumstances should be examined in determining whether a juvenile has intelligently waived those rights, it is important that the juvenile is questioned in an adversary setting and not in the confidential atmosphere of the juvenile court process; otherwise he may not realize that criminal responsibility might result. Awareness of potential criminal responsibility may often be imputed to a juvenile where police are conducting the interrogation."

---

[2] The following jurisdictions have not adopted the *Maloney-Harling* approach: California: *People* v. *Lara*, 67 Cal.2d 365, 62 Cal. Rptr. 586, 432 P.2d 202 (1967); Florida: *State* v. *Francois*, 197 So.2d 492 (Fla. 1967); Illinois: *People* v. *Prude*, 32 Ill. App.3d 410, 336 N.E.2d 348 (1975); Minnesota: *State* v. *Loyd*, 297 Minn. 442, 212 N.W.2d 671 (1973); Missouri: *State* v. *Wright*, 515 S.W.2d 421 (Mo. 1974); Oregon: *State* v. *Gullings*, 244 Or. 173, 416 P.2d 311 (1966); Tennessee: *Braziel* v. *State*, 529 S.W.2d 501 (Tenn.Cr.App. 1975); Texas: *Whitaker* v. *State*, 467 S.W.2d 264 (Tex.Cr.App. 1971); Washington: *State* v. *Prater*, 77 Wash.2d 526, 463 P.2d 640 (1970); and Wisconsin: *Theriault* v. *State*, 66 Wis.2d 33, 223 N.W.2d 850 (1974).

Likewise, in *People* v. *Prude*, 32 Ill. App.3d 410, 416, 336 N.E.2d 348, 353 (1975), it was held that the trial court erred in granting a motion to suppress a juvenile defendant's inculpatory statement solely on the ground that the juvenile received no specific warning that he might be certified as an adult and subjected to criminal prosecution. The court said:

"[T]here is no requirement that a juvenile be specifically advised of the possibility of certification, albeit this procedure has been recognized as the safest method an interrogating authority can pursue. *E.g.*, *State* v. *Loyd* (1973), 297 Minn. 442, 212 N.W.2d 671. What is required is either a showing of the juvenile's awareness, for example, by his previous exposure to the criminal justice system, or by a showing that the interrogation process clearly conveyed to the juvenile the possibility of subsequent criminal prosecution."

We believe that the majority approach is the better reasoned one. We hold that if a juvenile has been fully advised of his constitutional rights, and it is apparent from the totality of the circumstances that a criminal prosecution might follow, his confession, if freely and voluntarily made, is admissible in a criminal trial in a circuit court notwithstanding the confession was made prior to certification and transfer of the juvenile's case by the Juvenile and Domestic Relations District Court.

In the case under review, the statement made by Harris to the officers on June 8, 1975, was a voluntary statement, freely and intelligently made, after he had been fully advised of his constitutional rights, and with knowledge that the statement could and would be used against him in a court of law. The interrogation of defendant was conducted by the police officers in an adversary setting in police headquarters. The defendant knew that the crimes being investigated were murder and armed robbery and that he was a suspect. He had been so advised in writing and the form that he executed prior to questioning clearly set forth his rights to remaiñ silent, to have counsel and to stop answering any questions whenever he so desired. His mother was present. The juvenile authorities were not present and did not participate in the interrogation.

Defendant was born on June 21, 1958, so at the time of questioning he was almost 17 years old. He had completed seven grades in the public schools and had also attended school at the

Hanover School for Boys, a correctional institution where he was confined at one time, and at the Beaumont Learning Center, another correctional institution where he was confined on two occasions.

Harris' murder of his grandfather, and his armed robbery of a grocery store, were but the last two acts in a juvenile delinquent's career which had already precipitated the filing of 30 juvenile petitions against him. On ten occasions Harris had been found not innocent of charges that would have been felonies if committed by an adult. On thirteen occasions he had been found not innocent of charges that would have been misdemeanors if committed by an adult. On one occasion he had been given a six-month jail sentence. The crimes with which he had been previously charged include statutory burglary, larceny of automobiles, larceny from persons, destruction of private property, assault and battery, impeding a police officer, drunk in public, stabbing with intent to maim and kill, profanely swearing and cursing in public, hit and run, operating a vehicle without an operator's license, reckless driving, and sodomy.

The previous exposure of defendant to Virginia's criminal justice system, as well as the warnings that his statement could and would be used against him in a court of law, clearly conveyed to defendant the possibility of subsequent criminal prosecution. Indeed it would be naive for one to believe that with this background Harris did not realize that he could be tried in the circuit court and subjected to confinement in the penitentiary.

The judgment of the lower court will be

*Affirmed.*