(No. 48154.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. CHARLES E. PRUDE *et al.,* Appellees.

*Opinion filed April 5, 1977.*

William J. Scott, Attorney General, of Springfield
(James B. Zagel, Jayne A. Carr, and Raymond McKoski,

Assistant Attorneys General, of Chicago, of counsel), for the People.

Richard J. Wilson, Deputy Defender, and Ann L. Carr, Assistant Defender, Office of the State Appellate Defender, of Springfield, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

We allowed the People's petition for leave to appeal from a judgment of the appellate court (32 Ill. App. 3d 410) affirming an order of the circuit court of St. Clair County which granted motions to suppress the confessions of the defendants, Charles E. Prude and Maurice C. McGuire.

At about 6:15 p.m. on January 7, 1974, Prude and Theodore Wright, both of whom were 16 years old, were arrested at Johnny Wong's restaurant in connection with the robbery and shooting of Wong. The youths, who were employed at the restaurant, were given the admonitions from *Miranda* (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) and taken to the police station. There they viewed "mug shots" for over an hour attempting to identify the man, who, according to their original story to the police, had shot Wong. They were questioned separately, and after the questioning police officers proceeded to pick up two other juveniles, Richard Cooper and the defendant McGuire, whom Prude had implicated.

McGuire, who was 16 years old, was arrested at his home between 10 and 11 p.m. on January 7. His parents were present when he was given the *Miranda* warnings, and they were told that their son was involved in a shooting. There was conflicting testimony at the hearing on the motions to suppress as to whether McGuire was threatened on the way to the police station. He arrived at the station at about 11:30 p.m.

Sometime after 10:30 p.m. the *Miranda* warnings were read again to Prude and he was given a form, which he signed. The form set out the admonitions prescribed by *Miranda* and also contained these statements:

"3. Should the Juvenile court find that I have committed the offense I am alleged to have committed, the Court may, among other things, send me [to] the Correctional school, place me with another guardian, or supervise me on probation for an indefinite period of time.

\* \* \*

6. Should my parents and I be unable, financially, to retain legal counsel (lawyer) the Juvenile Court will appoint counsel for me."

After signing, Prude gave a statement in which he confessed to planning and participating in the robbery and shooting of Johnny Wong. The confession was later typed and signed by him.

There was conflicting testimony as to whether Prude's mother had been notified of his arrest. She testified she telephoned Johnny Wong's restaurant after being informed by her daughter a shooting had taken place and was told by a police officer that a homicide had occurred. She then phoned the juvenile department of the police and was told her son had been a witness to a shooting. She said the police first telephoned her at 2 a.m. that morning and told her that her son was being detained overnight but they made no mention of a murder. An officer who questioned Prude testified that Prude had requested that his mother be notified and that he had told her that her son was involved in a shooting. Two other officers testified that defendant Prude was allowed to call home during the questioning and had spoken to someone. Mrs. Prude came to the station at 1:30 p.m. the following day.

Between 11:30 p.m. and 12:30 a.m. the *Miranda* cautions were read again to McGuire and he signed the form which has been described. He then gave the police a statement in which he confessed to planning and partici-

pating in the robbery and murder of Wong. McGuire testified at the hearing on the motion to suppress that he understood that he had the right to remain silent but that he did not understand the other warnings of *Miranda*, though he had told the police officers he did understand them. He also stated that although he had signed the form he had not read it. He said he had signed the confession because he felt threatened, but officers testified that no threats of any kind were made to either of the defendants.

It is not disputed that neither of the defendants was informed that he could be charged with a crime as if he were an adult. Also it is agreed that neither was informed prior to giving a confession that Wong had died shortly after the shooting. A juvenile officer was present at times during the questioning of Prude and McGuire. He did not take part in the questioning or in the taking of the confessions. He did read the *Miranda* warnings to them and gave them the forms and witnessed their signatures.

On February 14, 1974, the defendants were ordered to be criminally prosecuted (Ill. Rev. Stat. 1973, ch. 37, par. 702—7(3)), and on March 7, 1974, they were indicted for murder. In suppressing their confessions the trial court found that the confessions were voluntarily given but that the circumstance that the police did not advise the defendants that they could be prosecuted as though they were adults denied them due process. The appellate court held that the trial court committed error in suppressing the confessions on the sole ground that no warning of the possibility of being prosecuted as an adult was specifically given the defendants. However, the court did affirm the suppression order on the ground that the defendants had not knowingly waived their right to remain silent when there was no showing the defendants were aware that they might be prosecuted as adults. The appellate court stated that a juvenile's awareness that he might be prosecuted as an adult need not be reached through specific warnings, but that the awareness could be the product of the

interrogation process itself and its character or of the juvenile's prior experience. 32 Ill. App. 3d 410, 416-17.

The defendants contend here that the language of the form that they signed led them to believe they would be given the "ameliorative and rehabilitative" processing of the juvenile court system and that this belief influenced them to give the confessions. They say that the language of the form when considered with the circumstance that the police did not advise them of the possibility they might be prosecuted as if they were adults made their confessions involuntary.

One court has held that for a confession to be admissible an accused who is a juvenile must have been made aware that he may be prosecuted as an adult through an explicit warning. (*State v. Maloney* (1967), 102 Ariz. 495, 433 P.2d 625.) There have been decisions that while the juvenile must have this awareness, it may come from the adversary character and setting of his interrogation by the police. *State v. Loyd* (1973), 297 Minn. 442, 212 N.W.2d 671; *State v. Rone* (Mo. 1974), 515 S.W.2d 438; *State v. Gullings* (1966), 244 Ore. 173, 416 P.2d 311; *State v. Prater* (1970), 77 Wash. 2d 526, 463 P.2d 640.

However, this court has long looked to the "totality of the circumstances" to determine the voluntariness of any confession. (See *In re Lamb* (1975), 61 Ill. 2d 383, 388; *People v. Nemke* (1962), 23 Ill. 2d 591, 600.) This was described in *People v. Johnson* (1970), 44 Ill. 2d 463, 468: "The determination of the question whether or not a confession is voluntary depends not on any one factor, but upon the totality of all the relevant circumstances." And in *People v. Prim* (1972), 53 Ill. 2d 62, it was said: "Whether a statement is voluntarily given depends upon the totality of the circumstances. The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed." 53 Ill. 2d 62, 70.

Courts have not required, in considering the admissi-

bility of confessions, that the police advise an accused of the nature of the charge, of the possible punishment, or of all the material facts known to them. (*United States v. Anderson* (D.C. Cir. 1976), 533 F.2d 1210, 1212 n.3; *Collins v. Brierly* (3d Cir. 1974), 492 F.2d 735, 738; *United States v. Campbell* (9th Cir. 1970), 431 F.2d 97, 99; *United States v. Hall* (4th Cir. 1968), 396 F.2d 841, 845-46; *People v. Smith* (1969), 108 Ill. App. 2d 172, 179-80.) This court has recognized that the receiving of an incriminating statement by a juvenile is a sensitive concern. In *People v. Simmons* (1975), 60 Ill. 2d 173, the court quoted from *In re Gault* (1967), 387 U.S. 1, 55, 18 L. Ed. 2d 527, 561, 87 S. Ct. 1428, 1458: " '*** [T]he greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.' " (60 Ill. 2d 173, 180.) We consider, however, that the circumstance that an accused is a juvenile does not of itself require that he be advised he may be prosecuted as if he were an adult before he may knowingly waive his right to remain silent.

A review of all of the circumstances here requires the conclusion that the defendants knowingly and intelligently waived their rights to remain silent and that the confessions were voluntarily given. It is undisputed that the police gave the warnings from *Miranda* to the defendants and that both indicated to the police their understanding of them. McGuire specifically testified that he understood his right to remain silent. Both of the accused were 16 years old, and there is nothing to suggest that they were of less than normal intelligence. Each had had previous encounters with the police. Prude had been arrested and "counseled" on several occasions. He had been adjudicated to be a delinquent once and had been placed on probation. McGuire had been arrested and charged with robbery, but had been released after questioning. The parents of the

defendants had been informed that they were being held at the police station in connection with a shooting. While McGuire alleged that he had been threatened, this testimony was contradicted by police officers, and the factual determination was one for the trial court. Presenting the form which contained language referring to juvenile proceedings to the defendants cannot be reasonably judged to have induced the confessions. McGuire testified that he did not read the form, and of course he could not have been induced by its language into making the confession. Neither of the defendants said that he would not have confessed had he known he could be prosecuted as if he were an adult. Their interrogation was at all times conducted by police officers in an obviously adversary setting. The open and *parens patriae* relation between the juvenile court and a juvenile does not exist between the police and a juvenile. (*People v. Zepeda* (1970), 47 Ill. 2d 23, 29.) Although the defendants were not specifically advised that Wong had died, they were aware they were being interrogated regarding an armed robbery in which Wong had been shot three times. It was clear a grave crime and not some minor violation was involved. An awareness of potential criminal responsibility under all the circumstances here could properly be imputed to the defendants. In *State v. Loyd* (1973), 297 Minn. 442, 450, 212 N.W.2d 671, 677, and in *State v. Gullings* (1966), 244 Ore. 173, 182, 416 P.2d 311, 315, it was held that, considering the adversary nature of the police interrogations involved, the awareness that they might be prosecuted criminally could be charged to the juvenile defendants, although specific warnings that they could be prosecuted were not given. The confessions given by the juveniles were deemed to have been voluntary. The confessions here of Prude and McGuire must be considered as having been voluntarily given.

For the reasons given, the judgments of the circuit and appellate courts are reversed and the cause is remanded to

478

the circuit court of St. Clair County for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*