COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Felton
Argued at Richmond, Virginia


QUINTON CARY
                                            OPINION BY
v.    Record No. 0277-02-2          JUDGE ROBERT P. FRANK
                                            MAY 6, 2003
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                  Thomas N. Nance, Judge

        Craig S. Cooley for appellant.

        Steven A. Witmer, Assistant Attorney General
        (Jerry W. Kilgore, Attorney General, on
        brief), for appellee.


     Quinton Cary (appellant) was convicted in a bench trial of

murder, in violation of Code § 18.2-32; two counts of abduction,

in violation of Code § 18.2-48; two counts of use of a firearm in

the commission of a felony, in violation of Code § 18.2-53.1; and

attempted murder, in violation of Code §§ 18.2-26 and 18.2-32.  On

appeal, he contends the trial court erred in denying his motion to

suppress his confession.  He argues that, as a juvenile, he did

not knowingly, voluntarily, and willingly waive his Fifth

Amendment rights prior to his interrogation by the police.  For

the reasons stated, we affirm the convictions.

Appellant, who was seventeen years old at the time, was arrested at his home on July 13, 2001 and placed in a police car. His mother tried to approach the car, but she was denied the opportunity to talk with her son at that point. Appellant was taken to police headquarters, but was not brought before any judicial officer prior to questioning.

Before the interview, Detective James E. Foster advised appellant of his Miranda rights, see Miranda v. Arizona, 384 U.S. 436 (1966). Appellant signed a waiver form, indicating he understood his rights. He signed just below the statement, "You may voluntarily waive or give up the above rights that have been explained to you and make a statement if you so desire."

The police videotaped the entire interrogation, which lasted approximately forty minutes. Initially, appellant claimed he provided the codefendants with a gun, but did not participate in any of the crimes. Eventually he admitted his involvement in the offenses, although he continued to claim he did not actually shoot either of the victims.

The detective testified at the suppression hearing that appellant could read and write and that he appeared to understand his rights. Appellant did not appear to be intoxicated or on drugs. He was "attentive throughout the

---

[1] We only recite the facts surrounding appellant's waiver of his rights, not the facts of the offenses.

-

entire interview." He appeared to "know what was going on." Detective Foster characterized the appellant as "cordial."

Detective Foster never asked appellant if he wanted to have a parent present during questioning. Police procedure did not allow any family members inside the interrogation room during an interrogation. The detective indicated during his testimony that no one tried to contact him concerning appellant's arrest.

Michael Sherman, appellant's juvenile probation officer, testified appellant was convicted of robbery in 2001. The social history prepared for the disposition of that robbery indicated appellant had no history of psychological problems. Although he never completed the ninth grade and was a poor student, appellant never attended special education classes. He was frequently absent from school.

Julia T. Cary, appellant's mother, testified she was not allowed to talk to appellant while he was in the police vehicle. The officers told her that she would have to "call down" to the police station. She was unsuccessful in reaching the police by phone. The police also told Mrs. Cary to "come and see [appellant]," but she did not do so. At 1:00 a.m., she received a telephone call from the police, indicating appellant had been "locked up."

A video of the entire interrogation was admitted into evidence, and the trial court reviewed the video. In the video, Detective Foster explained to appellant the procedure he would

-

use during the interrogation.  Foster said he would first advise appellant of his rights and the pending charges.  He then would advise appellant of the evidence against him and then he would allow appellant to tell his "side of the story."  The videotape shows Detective Foster advising appellant of his Miranda rights.  Appellant then indicated he understood those rights.  At no point in the video did appellant ask that a parent or attorney be present.

Detective Foster, after properly reciting the Miranda rights and upon appellant acknowledging he understood those rights, handed appellant a form acknowledging the recitation.[2]  The detective told appellant that he could voluntarily waive or give up those rights that had been explained to him and make a statement.  Foster then said, "What I want you to do is put yes here that I read you your rights and then sign your name."  Appellant complied with the detective's instructions.

The trial court denied the motion to suppress, finding the waiver was voluntary and knowing.

---

[2] The form did not provide for a waiver of the Miranda rights.  Instead, the form said, in part, "Do you understand the rights that have been explained to you?"  Appellant wrote "yes" beside this question.  The form then said, "You may voluntarily waive or give up the above rights that have been explained to you and make a statement if you so desire."  After this sentence, appellant signed his name.

-

ANALYSIS

Appellant does not argue the police failed to inform him of his Fifth Amendment rights, but instead contends he did not knowingly, voluntarily, and willingly waive those rights. Specifically, he complains (1) he was denied access to a parent or another interested adult; (2) his age and low intelligence prevented him from properly waiving his rights; and (3) the procedures employed by Detective Foster prevented appellant from fully understanding his Miranda rights.

At the trial level, "[a] heavy burden rests upon the Commonwealth to demonstrate that the accused has made a valid waiver. Courts must indulge every reasonable presumption against waiver." Grogg v. Commonwealth, 6 Va. App. 598, 611, 371 S.E.2d 549, 556 (1988) (citations omitted). On appeal,

> we view the evidence in the light most favorable to the Commonwealth as the party that prevailed below, and grant to its evidence "all reasonable inferences deducible therefrom." Giles v. Commonwealth, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998) (citation omitted). In addition, we review the trial court's findings of historical fact only for "clear error," but we review de novo the trial court's application of defined legal standards to the particular facts of a case. See Ford v. Commonwealth, 28 Va. App. 249, 255, 503 S.E.2d 803, 805 (1998); see also Ornelas v. United States, 517 U.S. 690, 700 (1996).

-

<u>Watts v. Commonwealth</u>, 38 Va. App. 206, 213, 562 S.E.2d 699,

702-03 (2002).  <u>See also</u> <u>Commonwealth v. Peterson</u>, 15 Va. App.

486, 487, 424 S.E.2d 722, 723 (1992).

Juveniles are guaranteed the same constitutional rights

against self-incrimination and right to counsel during custodial

interrogation as adults are provided; they are also permitted to

waive those rights.  <u>Grogg</u>, 6 Va. App. at 611, 371 S.E.2d at

556.

> "The test to be applied in determining
> voluntariness [of waiver] is whether the
> statement is the 'product of an essentially
> free and unconstrained choice by its maker,'
> or . . . whether the maker's will 'has been
> overborne and his capacity for
> self-determination critically impaired.'"
> <u>Stockton v. Commonwealth</u>, 227 Va. 124, 140,
> 314 S.E.2d 371, 381 (1984) (quoting
> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225
> (1973)).  The Commonwealth, however, must
> prove not only that the waiver was
> voluntary, but also knowing and intelligent.
> <u>Edwards [v. Arizona</u>, 451 U.S. 477, 483-84
> (1981)].
>
>    *     *     *     *     *     *     *
>
> In deciding the question whether an accused
> has knowingly and intelligently waived these
> rights established in <u>Miranda</u>, and thus
> whether statements made by an accused during
> custodial interrogation are admissible
> against him, an inquiry into the totality of
> the circumstances surrounding the
> interrogation must be made.  <u>Fare [v.
> Michael C.</u>, 442 U.S. 707, 725 (1979)]
> (citing <u>Miranda</u>, 384 U.S. at 475-77).  The
> Supreme Court held in <u>Fare</u> that the totality
> of circumstances approach is appropriate
> where the issue is whether a juvenile has
> made a valid waiver.  442 U.S. at 725.  Our
> Supreme Court adopted this approach in

-

> Harris v. Commonwealth, 217 Va. 715, 719-20,
> 232 S.E.2d 751, 754-55 (1977), and Green v.
> Commonwealth, 223 Va. 706, 710, 292 S.E.2d
> 605, 607-08 (1982).
>
> "The totality [of the circumstances]
> approach permits -- indeed, it mandates --
> inquiry into all the circumstances
> surrounding the interrogation.  This
> includes evaluation of the juvenile's age,
> experience, education, background and
> intelligence, and into whether he has the
> capacity to understand the warnings given
> him, the nature of his Fifth Amendment
> rights, and the consequences of waiving
> those rights."  Fare, 442 U.S. at 725; see
> also Green, 223 Va. at 710, 292 S.E.2d at
> 607; Harris, 217 Va. at 719-20, 232 S.E.2d
> at 755.

Grogg, 6 Va. App. at 612, 371 S.E.2d at 556.  As the Supreme

Court said in in re Gault, "the greatest care must be taken to

assure that the admission was voluntary, in the sense not only

that it was not coerced or suggested, but also that it was not

the product of ignorance of rights or of adolescent fantasy,

fright or despair."  387 U.S. 1, 55 (1967).

Appellant maintains, as a juvenile, he should have been

brought before a judge or intake officer, "in the most expedient

manner practicable," pursuant to Code § 16.1-247.[3]  If the police

had followed the procedure in the Code, appellant argues, then

---

[3] Appellant does not contend a violation of this statute has any constitutional implications.  He cites this statute only in the context of his claim that a juvenile has a right to the presence of a parent while police question him.  See Roberts v. Commonwealth, 18 Va. App. 554, 559, 445 S.E.2d 709, 712 (1994) (finding Code § 16.1-247 is procedural, and any failure to adhere to its provisions does not result in a per se violation of appellant's Fifth Amendment rights).

-

his parents would have received notice of the action taken. Thus, appellant contends he would have had access to a parent during questioning. Appellant contends that, without a parent or other adult present, the officer should have asked specifically whether he was waiving each <u>Miranda</u> right.[4]

Under <u>Grogg</u>, the absence of a parent does not necessarily invalidate a waiver, but instead constitutes a "circumstance and factor to be considered in the totality of the circumstances." 6 Va. App. at 613, 371 S.E.2d at 557. Appellant did not request the presence of a parent. Therefore, while their absence is a factor to consider, we will not overturn the trial court's ruling based on this factor alone.

Appellant also contends he was unable to knowingly waive his rights because he was of "low intelligence," "immature," "susceptible," "helpless," "confused," "afraid," and "duped." The record belies these characterizations.

Detective Foster testified appellant appeared to understand his rights. Indeed, appellant said he understood those rights. He appeared to understand the entire process. He did not appear intoxicated or "on drugs." He was "cordial."

---

[4] While appellant did not explicitly waive his rights, either orally or in writing, no argument is made on appeal that appellant did not waive his rights. He instead argues only that his waiver was invalid. <u>See</u> <u>North Carolina v. Butler</u>, 441 U.S. 369 (1979) (finding waiver can be implicit); <u>Harrison v. Commonwealth</u>, 244 Va. 576, 582, 423 S.E.2d 160, 163 (1992) (noting explicit waiver is unnecessary).

-

Appellant was seventeen years old.  He could read and write.  The record indicates, while appellant did not complete the ninth grade and was a poor student with poor attendance, he was not in special education classes.  He had no psychological or psychiatric illnesses.  Appellant also had prior contact with the judicial system, having been adjudicated guilty of robbery earlier in 2001.

The trial court reviewed the video, concluding Detective Foster was "not impolite" and "not authoritative."  The court found the atmosphere was "very relaxed."  The trial court found "no indication to me of anything other than a voluntary and knowing waiver."

The record does not support appellant's contention that he was too immature and uneducated to waive his rights.  The trial court could properly find appellant was capable of understanding and waiving his Fifth Amendment rights.

Finally, appellant challenges the procedure with which he was advised of his Miranda rights and in which the detective obtained his waiver.  He claims Detective Foster "did not give a clear and fair rendition of the warnings which would enable an adolescent to understand them."  He contends the detective presented the Miranda warnings as a "collateral matter."  Appellant also claims he failed to read the rights form prior to signing it because the detective simply told him to "put yes here that I read you your rights and sign your name."

-

The detective explained to appellant the procedure for the interrogation. Foster said he would first advise appellant of his rights and the charges. He then would advise appellant of the evidence they had against him, and then he would allow appellant to tell his "side of the story." Contrary to appellant's claim, this procedure did not present the <u>Miranda</u> rights as a collateral matter. The videotape clearly indicates Detective Foster advised appellant of his <u>Miranda</u> rights. After properly reciting the <u>Miranda</u> rights and upon appellant's acknowledgement that he understood those rights, the detective handed appellant the rights waiver form. He told appellant that he could voluntarily waive or give up those rights that have been explained to him and make a statement, if he so desires. Foster then said, "what I want you to do is put yes here that I read you your rights and then sign your name." Appellant complied with the detective's instructions. Nothing in the course of this procedure minimized the importance of these rights or appeared to confuse appellant.

We conclude, after considering the totality of the circumstances and the standard of review, that appellant knowingly, intelligently, and voluntarily waived his Fifth Amendment rights. Appellant was a seventeen year old who had prior contact with the police and the judicial system. While a parent was not present, he did not ask that an adult be present. No evidence indicated he was of "low intelligence" or had a

-

history of mental illness.  Detective Foster testified appellant did not appear intoxicated or "on drugs."  Indeed, appellant was attentive and appeared "to know what was going on."

The detective accurately advised appellant of his <u>Miranda</u> rights, and appellant indicated he understood those rights.  The record does not reveal appellant was coerced into waiving these rights.  Appellant was of sufficient age, competence, and experience to fully understand his rights and the consequences of his waiver.

The trial court's findings are well supported by the record.  We affirm the judgment of the trial court.

<u>Affirmed.</u>