THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICKY WALKER, Defendant-Appellant.

Second District   No. 77-61

Opinion filed July 10, 1978.

Ralph Ruebner, Allan L. Wiederer, and Mark Heyrman, all of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

During the early morning hours of August 4, 1975, Ms. Carol Adams was brutally beaten as she lay sleeping in her Rockford, Illinois, home. The investigation of the crime led to the arrest of the defendant-appellant, Ricky Walker, hereafter the defendant. On September 30, 1975, the Winnebago County grand jury handed down a four-count indictment against the defendant, charging him with the crimes of attempt murder, attempt rape, aggravated battery and burglary. Trial was before a jury who found the defendant guilty on all counts. He has appealed, raising six issues as grounds for reversing his conviction. Those contentions are: (1) That the trial court improperly denied the defendant's motion to suppress his confession; (2) That the trial court improperly instructed the jury on the charge of attempt murder; (3) That the imposition of consecutive sentences for burglary and attempt murder was improper; (4) That the defendant was improperly committed to the adult division of the Department of Correction; (5) That the defendant was improperly convicted of both aggravated battery and attempt murder; and (6) That the defendant's sentence was excessive.

After reviewing the record and weighing the arguments presented, we are of the opinion that the defendant's convictions must be reversed and

the cause remanded to the circuit court of Winnebago County for a new trial.

In the early morning hours of August 4, 1975, the Rockford police received a report of a prowler at the home of Ms. Carol Adams. The investigation of the report resulted in Officer Charles White's discovering Ms. Adams lying on her living room floor in a pool of blood from a wound to her head. Her nightgown was disheveled and a pair of torn panties was lying at her side. Ms. Adams was transported to a Rockford hospital where she remained unconscious until August 14, 1975. Their investigation of the crime led the Rockford police to believe that the defendant might have some knowledge of the offense. During mid-August, Detectives Jesse Otwell and Roland Donnelli went to the defendant's home to question him, but were informed by his mother, Mrs. Bessie Young, that the defendant was visiting his grandparents in Cleveland, Ohio. The detectives asked Mrs. Young to have the defendant contact them when he returned to Rockford. Upon returning to Rockford on September 2, 1975, the defendant contacted Detectives Otwell and Donnelli and arranged to meet them that afternoon. At 1:30 the detectives arrived at the defendant's home to transport him to police headquarters for questioning. Before the questioning of the defendant began, he was given the warnings mandated by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The defendant also read and signed a waiver of rights form. When first questioned concerning the beating of Ms. Adams, the defendant denied any knowledge of the crime. After this initial round of questioning, the detectives suggested that the defendant be photographed and fingerprinted. The defendant consented. After the defendant had been fingerprinted and photographed, Detectives Otwell and Donnelli again questioned him about the beating of Ms. Adams. The defendant persisted in his denials of any knowledge of the crime. It was approximately 3 p.m. when the detectives received a call from the police identification bureau informing them that one of the defendant's fingerprints matched a fingerprint found at the scene of the crime. It was only after the defendant was confronted with this incriminating information that he confessed to the crime.

After the defendant had made his oral confession, Detectives Otwell and Donnelli began the process of reducing it to writing. It was during that process that the detectives first learned that the defendant had turned 17 on August 30, 1975. This, of course, meant that the defendant was a juvenile at the time of the offense. The detectives then summoned a juvenile officer who remained at the jail until 4:20 p.m. when the defendant's written statement was completed.

In his confession, the defendant revealed that he entered Ms. Adams' home on two separate occasions during the night of the crime. It was

during the first entry, made with the apparent intent to commit a theft, that the defendant first observed Ms. Adams sleeping on her living room floor. After leaving the house with her purse, the defendant evidently decided to return and rape her. Armed with a baseball bat he found lying in the yard, the defendant entered Ms. Adams' home for a second time. While standing over her sleeping body for approximately 10 minutes, the defendant contemplated what he should do. Finally, he decided to hit Ms. Adams in the head with the bat so he could have sexual relations with her without getting caught. After striking Ms. Adams three times in the head with the baseball bat, the defendant raised up her nightgown and tore off her panties. However, the defendant found himself physically unable to perform his planned act. Before leaving the scene, the defendant wiped off the various surfaces he had touched in an effort to remove his fingerprints.

On September 30, 1975, a Winnebago County grand jury handed down a four-count indictment against the defendant. Count I charged the defendant with attempt murder; count II, with attempt rape; count III, with aggravated battery; and count IV, with burglary, in that he entered the home of Ms. Adams with the "* * * intent to commit therein a theft or felony * * *."

Prior to the commencement of his trial, the defendant moved to suppress his confession. At the hearing on that motion, the defendant's mother, Mrs. Young, testified that she went to the police station to see her son but was denied permission to do so despite the fact that she so requested. The police concede that Mrs. Young did visit the police station but deny she ever requested to see her son. They claim she limited her inquiries as to when her son would be released. Mrs. Young also claimed that she had previously informed Detectives Otwell and Donnelli that her son was only 16 years old. Detectives Otwell and Donnelli testified that they did not learn the defendant was 16 at the time of the offense until they began reducing the defendant's oral confession to writing, at which time they sent for the juvenile officer. At the close of the hearing, the presiding judge, John E. Sype, ruled the defendant's confession to be admissible.

At the close of the defendant's trial, the following jury instructions were given over his objection:

"A person commits the crime of attempt who, with intent to commit the crime of murder, does any act which constitutes a substantial step toward the commission of the crime of murder. The crime attempted need not have been committed.

A person commits the crime of murder who, without lawful justification, kills an individual if, in performing the acts which

caused the death, he *intends* to kill or *to do great bodily harm* to that individual; or if he knows that such acts will cause death to that individual; or if he knows that such acts create a strong probability of death or great bodily harm to that individual.

To sustain the charge of attempt murder, the State must prove the following propositions: That the Defendant performed an act which constituted a substantial step toward the commission of the crime of murder and that the Defendant did so with intent to commit the crime of murder." (Emphasis added.)

The jury returned a verdict of guilty on all counts, and the trial judge sentenced the defendant to two to six years' imprisonment for burglary to be served consecutively with concurrent terms of 20-60 years' imprisonment for attempt murder and 5-15 years' for attempt rape. No sentence was imposed for the aggravated battery conviction.

The first of the defendant's six contentions is that the trial court erred by not suppressing his confession. The defendant argues that the State failed to demonstrate that the defendant had knowingly and intelligently waived his constitutional right to remain silent. In support of this argument the defendant cites the fact that he was 16 at the time of the offense and was thus entitled to protections of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq.*) but was not informed of the possibility that he could be tried as an adult and that any statement he gave could be used against him. We find the defendant's argument to be without merit.

■■ *People v. Prude* (1977), 66 Ill. 2d 470, 6 Ill. Dec. 689, 363 N.E.2d 371, *cert. denied* (1977), 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 414, reiterates the long-standing Illinois rule that the admissibility of a circumstances surrounding it. Applying that standard to the case at hand, we find the trial court properly admitted the defendant's confession into evidence. The record clearly reveals that the defendant was given his *Miranda* warnings and that he read and signed a waiver of rights form. Furthermore, the defendant denied any knowledge of the crime until he was confronted with a highly incriminating piece of evidence. The sole mitigating factor against the admission of the defendant's confession is the fact that the police failed to warn the defendant that any statement he made could be used against him if the State chose to prosecute him as an adult. This failure appears to have been caused by a rather unusual circumstance. The defendant was 16 on the date of the offense but had turned 17 before he was questioned. However, the detectives questioning the defendant did not learn his age at the time of the offense until after he had confessed after being confronted with a highly incriminating piece of

evidence. Once the defendant's age was determined, a juvenile officer was called in and remained until the defendant's confession had been reduced to writing. Under these facts, we feel the trial court properly admitted the defendant's confession into evidence.

■■ Secondly, we turn to the defendant's contention that the trial court improperly instructed the jury on the attempt murder count by giving them an instruction which allowed them to find the defendant guilty of attempt murder, even if they believed the defendant only had the intent to do great bodily harm. We agree that the instruction given in the case at hand allows for such a possibility, and, accordingly, we must reverse. *People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28, 33.

In *Harris*, our supreme court held that:

> "An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown."

The instruction given in the case at hand allowed the jury to convict the defendant even if they believed he acted with the mere intent to do great bodily harm. Therefore, the defendant's conviction must be reversed and the cause remanded for a new trial.

In the interest of judicial economy, we now turn our attention to two matters that may well arise at a retrial.

■■ ■ Upon an examination of the record, we find count IV of the indictment charging the defendant with burglary to be defective. The evidence presented at trial clearly shows the defendant made two separate and distinct unauthorized entries into the Adams home—one with the intent to commit a theft and the other with the intent to commit a rape. Therefore, there were two separate and distinct burglaries. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) However, the indictment in the case at hand does not specify which entry was the basis of the burglary count. Therefore, the indictment lacks the specificity necessary to be used as a bar to subsequent prosecutions for the same conduct. Thus, under the test set forth in *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437, the indictment is defective. The indictment's being defective, jeopardy has not attached. (*People v. Jones* (1973), 53 Ill. 2d 460, 292 N.E.2d 361.) Therefore, on remand, the State may cure the defect by reindicting the defendant so the indictment reflects the requisite specificity.

The second of the two issues raised by the defendant that may arise again in a new trial is his contention that he was improperly committed to the Adult Division of the Department of Corrections. In support of this contention the defendant cites *People v. Ray* (1977), 51 Ill. App. 3d 748, 366 N.E.2d 960, where the Fifth District interpreted the applicable statute, section 5—8—6(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—6(c)), as requiring any defendant, who

was under 17 years of age at the time of the offense for which he was convicted, to be committed to the Juvenile Division of the Department of Corrections. With all due respect to our brethren in the Fifth District, we respectfully disagree with their interpretation of the statute.

■■ In *Ray*, the Fifth District relied upon *People v. Carr* (1961), 23 Ill. 2d 103, 177 N.E.2d 361, where our supreme court interpreted an earlier statute. The pertinent part of that statute reads as follows:

"That every male person *under the age of 17 years adjudged guilty* * * * shall be committed to the Youth Commission instead of the penitentiary." (Emphasis added.) (Ill. Rev. Stat. 1959, ch. 38, par. 803.)

The statute involved in the case at hand reads as follows:

"All offenders *under 17 years of age sentenced* to imprisonment shall be committed to the Juvenile Division of the Department of Corrections * * *." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—6(c).

We believe the Fifth District's reliance on *Carr* was misplaced. The application of the statute in *Carr* was dependent on the defendant's age on the date of his conviction. In our opinion, the application of the statute in the case at hand is determined by the defendant's age on the date of sentencing. We find support for this position in *People v. Gammons* (1970), 130 Ill. App. 2d 120, 264 N.E.2d 866, where the First District held the following statute to be triggered by the defendant's age on the date of sentencing:

"(a) All male persons *17 years of age or over sentenced* to a term of imprisonment in a penitentiary shall be sentenced to and confined in the Illinois State Penitentiary.

* * *

(c) All male persons under 17 * * * sentenced to imprisonment shall be committed to the Illinois Youth Commission, * * *." (Emphasis added.) (Ill. Rev. Stat. 1967, ch. 38, pars. 119—2(a), 119—2(c).)

We find the statute in *Gammons* to be more analogous to the current statute than was the statute in *Carr*. Accordingly, we hold that whether or not a defendant must be committed to the Juvenile Division of the Department of Corrections under section 5—8—6(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—6(c)) is to be determined by the defendant's age at the date of sentencing.

In light of our disposition of these issues, we need not reach the defendant's contention that he was improperly found guilty of attempt murder and aggravated battery or his contention that his sentence was excessive.

For the foregoing reasons, the defendant's convictions on all counts are

reversed, and the matter is remanded to the circuit court of Winnebago County for the purpose of a new trial.

Reversed and remanded.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.