THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KATHY JOANNE BENNETT, Defendant-Appellant.

Second District   No. 2—89—0695

Opinion filed December 5, 1991.—Rehearing denied January 10, 1992.

G. Joseph Weller, Kim M. DeWitt, and Sherry R. Silvern, all of State Appellate Defender's Office, of Elgin, for appellant.

Daniel A. Fish, State's Attorney, of Dixon (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Kathy Joanne Bennett, was convicted of two separate counts of felony murder. A jury found defendant guilty of the offense of first degree murder resulting from the commission of aggravated battery, causing great bodily harm (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)), and first degree murder resulting from the commission of an aggravated battery, causing bodily harm to a person 60 years of age or older (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)). Defendant was found not guilty of five other charges, three of which alleged that defendant knowingly created a strong probability of death or great bodily harm under section 9—1(a)(2). (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2).) Defendant was sentenced to 55 years' imprisonment in the Department of Corrections.

On appeal, defendant presents the following issues for review: (1) whether her verdicts were legally inconsistent; (2) whether aggravated battery is a valid predicate to felony murder; (3) whether she was proved guilty beyond a reasonable doubt; (4) whether the jury received improper instructions regarding the substantive use of prior testimony in a criminal case; (5) whether she was denied effective assistance of counsel; (6) whether certain gruesome slides,

photographs, body charts, and videotapes were cumulative and prejudicial; (7) whether the trial court relied on improper factors in aggravation of her sentence; and (8) whether she was improperly convicted of and sentenced for committing two crimes where the facts show only one criminal act. We affirm in part, vacate in part, and remand the cause for resentencing.

At approximately 9 a.m., November 2, 1988, the body of 80-year-old Carrie Duncan (Duncan) was discovered near a road in southeastern Lee County. Carrie Duncan was 4 feet 10 inches tall and weighed approximately 100 pounds. She received multiple stab wounds to her abdomen, chest, and back. She also received multiple blows to the head, including both sides of the forehead, the ears, and the back of the head under the scalp. Her death was caused by blood loss, due to a stab wound to the liver, and blunt trauma to the head, resulting in swelling of the brain and hemorrhaging around the brain. Her body was in a grassy area surrounded only by grain bins and utility poles, approximately 150 to 200 feet off the main road. Her purse rested 60 feet south of her body. A broken dental plate and a common serrated steak knife were in the same area as the purse.

The facts below provide a brief history of this case. Additional facts will be provided in order to understand the individual issues as they are discussed.

During the evening of November 1, 1988, defendant and her boyfriend, Calvin Pierce, drank beer together at two different taverns. At closing time, approximately 1 a.m., they left in a truck driven by Pierce. Pierce suggested that they pick up the victim, Carrie Duncan, in order to scare her. Pierce and Duncan had a relationship lasting many years where Duncan lent Pierce money and bought him clothes, shoes, and food in exchange for help with her gardening, shopping and home maintenance. Defendant also testified that Duncan and Pierce were lovers. Pierce's desire to scare Duncan arose from his anger resulting from Duncan's harassment concerning a debt Pierce owed Duncan for money lent to purchase an automobile. Defendant agreed to the plan, asked Pierce what to do, and climbed in the back of the truck with a six-pack of beer. There is evidence that Pierce asked Duncan to join him for breakfast at Ziggys, a place they frequented together. Duncan agreed and stepped into the truck with Pierce. After driving for a while, Pierce pulled off the main road. When the truck stopped, Pierce knocked on the rear of the truck and told defendant that Duncan had been "bitching" at him. Defendant climbed out of the back and

asked Duncan, "[W]hat's your problem lady?" Defendant's statement to the police related that Pierce pushed Duncan out of the truck. Pierce told defendant to get Duncan's purse and look through it. Subsequently, Pierce severely beat and stabbed Duncan. Defendant denies participation in the attack.

On the morning of November 2, 1988, in response to a request by the police, defendant and Pierce drove themselves to the fire department for an interview about the circumstances surrounding Duncan's death. Defendant signed a *Miranda* waiver and provided a taped statement.

On February 15, 1989, defendant pleaded guilty to a charge alleging she knowingly caused death to Duncan by kicking her in the head. Defendant subsequently withdrew this plea at a hearing on April 5, 1989.

Defendant first contends that her verdicts were legally inconsistent and must be reversed. Defendant was found not guilty of murder based on acts which "create a strong probability of death or great bodily harm" (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2)) and was found guilty of felony murder based on the commission of an aggravated battery which "causes great bodily harm" (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)). Defendant explains that an individual cannot be guilty of "caus[ing] great bodily harm" and at the same time be exonerated on charges of "creat[ing] a strong probability of death or great bodily harm." We do not agree.

The general rule is that legally inconsistent verdicts arising out of the same set of facts necessarily involve the fact finder's conclusion that the same essential element of the crime is found both to exist and not to exist. (*People v. Frias* (1983), 99 Ill. 2d 193, 198.) For example, legal consistency requires that when a determination is made that a mental state of intentional conduct exists, then a mental state of unintentional conduct with respect to the same crime cannot also be found to exist. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 195.) To find otherwise would mean that an individual simultaneously acted intentionally and unintentionally, and this is not a legal possibility.

Defendant seeks to apply the reasoning in *Frias* and *Hoffer* to compel a reversal. In *Frias,* the court held that a conviction of armed violence based on having committed murder while armed cannot stand in the face of an acquittal on the predicate offense of murder. (*Frias,* 99 Ill. 2d at 204.) An individual cannot be found guilty of having committed murder while armed if that person has not committed a murder. In *Hoffer,* the court held that verdicts are

inconsistent when they label the same murder as both intentional and involuntary. (*Hoffer*, 106 Ill. 2d at 195.) In these cases, the trial verdicts were improper because they found that certain essential elements of a crime both exist and do not exist.

■ The facts in the present case are distinguishable. They do not involve mutually inconsistent findings. A case factually on point is *People v. Sandy* (1989), 188 Ill. App. 3d 833.

In *Sandy* (188 Ill. App. 3d 833), the defendant was charged and convicted in the same manner as defendant here. Sandy was acquitted of first degree murder under section 9—1(a)(2) and convicted of felony murder under section 9—1(a)(3) (Ill. Rev. Stat. 1961, ch. 38, pars. 9—1(a)(2), (a)(3)). The conviction was affirmed on appeal. The court reasoned that "a jury may acquit a defendant on one or more counts on a multicount indictment in the belief that the count on which it convicted the defendant will provide sufficient punishment." (*Sandy*, 188 Ill. App. 3d at 845.) While agreeing with the outcome in *Sandy*, we do not apply its reasoning here. The "sufficient punishment" reasoning makes more sense in cases where the offenses charged are different and may result in different sentences (see *People v. Robinson* (1986), 147 Ill. App. 3d 131 (where the charges were theft and possession of a stolen vehicle); *People v. Dawson* (1975), 60 Ill. 2d 278 (where the charges involved murder and armed robbery)) rather than instances like the present case where the crimes charged are "murder" or "murder," and the potential sentence is identical.

Instead, we apply a form of reasoning that examines the elements of section 9—1(a)(2) murder with the elements of section 9—1(a)(3) murder in order to determine whether a conviction of one but not the other would necessitate finding an essential element to both exist and not exist resulting in a reversible inconsistency. Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(2), (a)(3).

Whether a particular act creates a "strong probability" of death or great bodily harm according to section 9—1(a)(2) is a question of fact to be decided by the fact finder. (*People v. Melind* (1989), 179 Ill. App. 3d 836, 843; see also *People v. Palmer* (1979), 76 Ill. App. 3d 1014.) The language of section 9—1(a)(2) was adopted because it was the

> "[p]lainest description of the situation which lies between the 'practical certainty' of [intentional homicide under section 9—1—(a)(1)], and the 'likely cause' and 'substantial and unjustifiable risk' of the involuntary manslaughter provision [section 9—3 using 'recklessly' as defined in section 4—6]." (Ill.

Ann. Stat., ch. 38, par. 9—1(a)(2), Committee Comments, at 18 (Smith-Hurd 1979).)

According to *Melind,* the essential element for a conviction under section 9—1(a)(2) is that the defendant must know that an act creates a strong probability of death or great bodily harm. (*Melind,* 179 Ill. App. 3d at 844.) Although its own terms are used for its definition, the focus is on the requisite mental state. Thus, to be inconsistent, a felony murder conviction must possess a conflicting mental state requirement.

Generally, a felony murder charge under section 9—1(a)(3) of the Criminal Code of 1961 does not require a showing of intent or knowledge. The accepted rule is "[a] felon is responsible for those deaths which occur during a felony and which are the foreseeable consequence of his initial criminal acts." (*People v. Graham* (1985), 132 Ill. App. 3d 673; see also *People v. Hickman* (1974), 59 Ill. 2d 89.) According to *Graham,* in the context of a murder committed during a felony, "it is immaterial whether the killing is intentional or accidental, or is committed by a confederate without the connivance of the defendant, or even by a third person trying to prevent the commission of the felony." *Graham,* 132 Ill. App. 3d at 679.

Fortuitously, in the present case the predicate felony for the section 9—1(a)(3) conviction is that an aggravated battery was committed involving (1) a knowing infliction of bodily harm to an individual of 60 years of age or older and (2) an intentional infliction of great bodily harm. Thus, as opposed to other felony murders, an element of intent or knowledge must be found in order to establish that defendant caused the harm in a felony murder predicated upon the commission of an aggravated battery. The question then becomes whether the existence of the necessary mental state of a section 9—1(a)(3) felony murder charge predicated upon an aggravated battery conflicts with an acquittal of a section 9—1(a)(2) murder charge involving a knowing creation of a strong probability of death or great bodily harm. We determine that it is possible for a jury to find that defendant knowingly caused harm without finding that defendant knowingly created a strong probability of death or great bodily harm to any individual.

As previously stated, the jury here determined that defendant intended to inflict (1) bodily harm on a person 60 years of age or older and (2) great bodily harm. At the same time, the jury determined that defendant did not intend to commit harm *which had a probability of causing death* and that defendant did not intend to do something which would *only probably* cause harm. A rigorously

literal jury, carefully reading the language of the charges, could have concluded that kicking and stabbing an 80-year-old woman is not a probability so much as a certainty to cause great bodily harm but not so much as to give rise to a strong probability of death.

Following this reasoning, it is possible for a jury to find that a defendant *intentionally caused harm* but did not *knowingly create a strong probability of harm or death*. To illustrate, a jury could reason that a person knowingly creates a strong possibility of harm or death by placing a poisoned drink in front of another, whereas that person intentionally causes harm by physically administering the poison to another by way of injection. Therefore, in the present case, we find that the verdict is not inconsistent because the existence of the essential element of felony murder (premised upon the intentional infliction of "great harm" and "harm to a person 60 years of age or older") was not inconsistent with an acquittal on charges that defendant created a strong probability of harm or death.

■ Defendant next asks this court to reverse her conviction and hold that aggravated battery no longer is a valid predicate to felony murder. The Criminal Code of 1961 unambiguously establishes that aggravated battery is a forcible felony which is included in the definition of felony murder. (Ill. Rev. Stat. 1987, ch. 38, pars. 12–4, 2–8, 9–1(a)(3).) Furthermore, our supreme court has held that a perpetrator is responsible for murder if death results because of the commission of an aggravated battery. (*People v. Viser* (1975), 62 Ill. 2d 568, 580; *People v. Ray* (1979), 80 Ill. App. 3d 151, 156.) We see no reason to hold otherwise.

Defendant next maintains that proof of her guilt was not established beyond a reasonable doubt. In support of this contention, defendant argues that the only competent evidence of her guilt consisted of: (1) her mere presence as Calvin Pierce beat and stabbed Duncan; (2) her nudge of Duncan's leg to determine if she was alive; and (3) her inability to report Pierce's act until several hours after the event.

The general rule is that a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) *Collins* indicates that the question on review is whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) (*Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S.

Ct. 2781, 2789.) *Collins* further dictates that " 'upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' " (Emphasis in original.) (*Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) We cannot overturn a guilty verdict unless the proof is so unsatisfactory and unconvincing that it raises a serious doubt as to defendant's guilt in light of all the evidence. *People v. Szudy* (1982), 108 Ill. App. 3d 599, 605; see also *People v. Coulson* (1958), 13 Ill. 2d 290, 296; *People v. Redman* (1986), 141 Ill. App. 3d 691, 704.

■ Viewing the present case in the context of these principles, we conclude that there is sufficient evidence to support the jury's verdict. In the light most favorable to the prosecution, we are not convinced that there is serious doubt as to defendant's guilt.

Defendant admits her presence at the scene of the crime. Defendant also admits helping Pierce to "scare" Duncan at the crime scene. She admits asking Duncan, "[W]hat's your problem lady?" and "[W]hy were you bitching at him?" Although defendant denies her participation in the crime, sufficient evidence was presented which could cause a reasonable jury to reject defendant's claim. For example, a contributing factor to Duncan's death was the admission of a blunt trauma to the head. Such a trauma could have been caused by a kick to the head. The State offered expert testimony to establish that patterned abrasions found on Duncan's face were consistent with the shape of defendant's shoe, and that head trauma was a contributing cause of death. This evidence supports a reasonable conclusion that defendant delivered the kick to Duncan's head and thus participated in the killing. The jury heard significant amounts of testimony on this point, and we do not view its finding as unreasonable in light of the evidence presented. Furthermore, small amounts of blood were found on defendant's shoe and sock. Defendant also admitted kicking Duncan's side in order to see if she was alive after Pierce beat her.

Several other pieces of evidence tend to show defendant's involvement in the crime. Defendant admits checking the victim's purse for money while Pierce was accosting Duncan. Defendant admits taking the knife from Pierce after he used it to stab Duncan. Defendant admits intending to stab Duncan but claimed she could not. Defendant testified that she dropped the purse after looking through it before Pierce gave her the knife. However, both the knife and the purse were found at a significant distance away from the body. Thus, her testimony lost some credibility. Defendant never

mentioned moving the purse, so it should have been found near the body.

In addition, defendant never contacted the police or anyone else about the murder. Defendant testified that her fear of a reprisal from Pierce prevented her from doing so. However, evidence at trial tends to show that defendant was not fearful. For example, defendant and Pierce visited a friend's house immediately after the murder. When called as a witness, this friend described defendant's manner at that time as "fine." Thus, a jury could infer that defendant was not afraid of Pierce after the murder. Neither did defendant make an attempt to say something to the baby-sitter who called after the murder on November 2. The baby-sitter had been supervising defendant's three-year-old son during the night and wanted to know whether to bring the child back home on that same day. A jury could have determined that had defendant feared for her life or her son's life, she would have said something to warn the baby-sitter or forestall her arrival.

In order to establish her innocence, defendant points to conflicts in the evidence with respect to (1) the source of the patterned abrasion on Duncan's face, (2) her actual participation in the crime and (3) her fear of Pierce. However, this court has already held that a "conflict in the evidence does not establish a reasonable doubt, and a jury verdict based on substantial and credible evidence is not rendered reversible by the fact that other evidence was introduced which might, if believed, have resulted in a different verdict." (*People v. Jaffe* (1986), 145 Ill. App. 3d 840, 847.) Upon our review of the record, we do not have a grave and substantial doubt of defendant's guilt. *Jaffe*, 145 Ill. App. 3d at 847.

Defendant next argues for a reversal and remand because defendant's testimony from a hearing to withdraw a guilty plea was used to impeach defendant at her trial in violation of Supreme Court Rule 402(f), which provides, in pertinent part:

> "If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." 134 Ill. 2d R. 402(f).

The question posed to defendant at the plea withdrawal hearing asked defendant if, on the night of the murder, it was her belief that Duncan would not have stepped into the pickup truck with Pierce had Duncan seen defendant. Defendant agreed that her pres-

ence would have deterred Duncan from getting in the truck with Pierce. However, at trial, defendant testified she did not believe that Duncan would have declined to enter the truck had Duncan known of defendant's presence. The prosecution sought to admit the previous testimony in order to impeach defendant's trial testimony.

■ Although this issue was not properly preserved for appeal, defendant correctly points out that the admission of statements made in the course of plea negotiations can affect substantial rights and possibly amount to plain error. (*People v. Benniefield* (1980), 88 Ill. App. 3d 150, 156.) However, we fail to find plain error, primarily due to our determination that testimony provided during a hearing to withdraw a guilty plea does not lie within the envisioned scope of protected discussion of Supreme Court Rule 402(f). Rule 402(f) was enacted " 'to protect communications made by the defendant *in the bargaining process* from being turned into a weapon of the State at a later trial.' " (Emphasis added.) (*Benniefield*, 88 Ill. App. 3d at 154, quoting *People v. Morris* (1979), 79 Ill. App. 3d 318, 332.) The historical and practice notes following the committee comments state that Rule 402(f) "recognizes the need to encourage plea bargaining, and the inherent unfairness of encouraging a defendant to participate in plea negotiations but then using the negotiations against him if they fail." (Ill. Ann. Stat., ch. 110A, par. 402(f), Historical & Practice Notes, at 399 (Smith-Hurd 1985).) Thus, the purpose of Rule 402(f) is to render inadmissible statements made while negotiating a plea agreement or in the context of the agreement itself. We find no authority to support defendant's argument that the rule should also reach to testimony offered during a hearing on a motion to withdraw the guilty plea (a point subsequent to the plea negotiation and entry stage). Therefore, admission of the testimony for purposes of impeachment was not error. The central policy of the rule as applied to this situation would forbid admission of statements made pursuant to negotiating a plea or that the defendant had previously entered a plea. Since no such revelations were made here, no reversible error was committed.

Defendant next argues that she was denied effective assistance of counsel because of counsel's failure to file suppression motions and counsel's failure to tender instructions on the substantive use of prior inconsistent statements.

To succeed on a claim that counsel's assistance was so defective as to require reversal of a conviction, defendant must show (1) that

counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; see also *People v. Chandler* (1989), 129 Ill. 2d 233, 242.) The purpose of the effective assistance guarantee of the sixth amendment is to ensure that criminal defendants receive a fair trial. *Strickland,* 466 U.S. at 684, 80 L. Ed. 2d at 691, 104 S. Ct. at 2063.

The *Strickland* test is a benchmark used to determine whether a defendant received a fair trial. Defendant must overcome a strong presumption of outcome reliability and show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.

Both prongs of the *Strickland* test must be established by defendant. However, we need not determine whether counsel's performance was deficient before examining the prejudice allegedly suffered by defendant. *Strickland,* 466 U.S. at 695, 80 L. Ed. 2d at 698-99, 104 S. Ct. at 2068-69.

According to *Strickland,* "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." (*Strickland,* 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) Such a prejudice inquiry does not seek to determine whether the outcome of the case would have been different absent the error. Instead, it is the "confidence in" and "reliab[ility of]" the outcome that is in question. (*Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 697-98, 104 S. Ct. at 2068.) In making this inquiry, *Strickland* dictates that we must consider the "totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.

Applying the standard set out in *Strickland* in the context of all the evidence before the trial court, we find that defendant's trial was not rendered unfair due to the alleged errors of counsel. This finding rests on our determination that the findings at the trial level would not have been affected had trial counsel acted as defendant claims counsel should have.

■ Defendant first asserts defense counsel was ineffective for failing to recognize that she was arrested without probable cause and for failing to file a motion to quash her arrest and suppress statements she subsequently gave to the police. The fourth and fourteenth amendments to the United States Constitution dictate

that an individual cannot be seized or arrested without probable cause. *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.

An arrest occurs when the police inform defendant of a violation, defendant submits to their control, and it is clear that the police intend to arrest defendant and that defendant understands he is being arrested. (*People v. Avery* (1989), 180 Ill. App. 3d 146, 152.) The test for whether a person has been seized is "whether, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*Avery*, 180 Ill. App. 3d at 153.) According to *Avery*, the "coercive effect of police conduct taken as a whole" must be examined and not "each particular detail of the police conduct in isolation." (*Avery*, 180 Ill. App. 3d at 153.) In *Avery*, the appellate court held that the trial court erred in finding that no arrest occurred when defendants were first taken into custody for questioning. The court pointed to several factors which tended to indicate that an arrest had taken place. In *Avery*, the police located defendants at or near their homes and brought them to the station for interrogation about their involvement in the murder, defendants were not told they were free to leave, defendants could reasonably believe that they could not leave, defendants were kept in interrogation rooms for 8 and 10 hours, and defendants were left alone for hours at a time.

In the instant case, defendant drove to a fire station with Pierce in order to talk to the police about the circumstances surrounding Duncan's death. Defendant's questioning took place at the fire station in a large room that had a kitchen area, some lawn tables, and a large round table with chairs. A detective who participated in this questioning testified that defendant was not in custody and was free to leave because she was not a suspect. At this time, the police were investigating the circumstances surrounding Duncan's death and the background of people who knew Duncan. Defendant was advised of her right to remain silent pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. We find that these facts, taken as a whole, do not indicate sufficiently coercive conduct on the part of the police to cause a reasonable person to believe that he could not leave. Defendant does not show that she was interviewed for an unreasonably lengthy period of time as was the defendant in *People v. Townes* (1982), 91 Ill. 2d 32. Defendant was never handcuffed, nor was she a suspect until later in the interview. (*People v. Collins* (1989), 182 Ill. App. 3d 362.) We view the fact that defendant drove with

Pierce to the fire station as indicating the absence of coercion and analogous to *People v. Cooney* (1985), 136 Ill. App. 3d 989, where defendants were asked if they wished to return home while in transport to the police station. Finally, the interview took place in a spacious, nonintimidating room at a fire station. In our view, such an environment contributes to the overall absence of coerciveness on the part of the police. See *People v. Stofer* (1989), 180 Ill. App. 3d 158 (where one of the factors the court examined in concluding that an arrest took place was that the defendant was told to wait in an interrogation room for an extended period of time).

We, therefore, conclude that defendant was neither explicitly nor implicitly seized during the time period leading up to her arrest. It follows, then, that because defendant's counsel would have been unsuccessful in attempting to quash defendant's arrest and suppress defendant's subsequent statements, defendant was not prejudiced nor was her trial unfair.

Defendant next asserts that trial counsel was ineffective because of a failure to tender jury instructions which would reflect proper use of the rule regarding the substantive use of prior inconsistent statements. The statements in question were made by a forensic pathologist (Blum) who testified at Pierce's earlier trial that the bruise on Duncan's face could have been caused by either a shoe or a boot. Defense counsel pointed out that this testimony appeared to be inconsistent with testimony Blum made during the Bennett trial to the effect that the abrasion on Duncan's face was more consistent with the bottom of Bennett's tennis shoes than with the bottom of Pierce's boots.

During a trial conference, the defense counsel, the prosecuting attorneys, and the trial judge agreed that section 115—10.1 of the Code of Criminal Procedure of 1963 provided that prior inconsistent statements made under oath may be considered by the jury as substantive evidence. (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1.) While the prosecution did not think that an inconsistency was shown, the judge seemed to agree with defense counsel with respect to the use of Blum's prior testimony in a substantive manner. However, when the jury instructions were given, defense counsel failed to tender jury instructions consistent with the substantive use of this testimony. Instead, the jury was instructed to use prior testimony only for the purpose of deciding the weight to be given to the evidence in the present trial.

The policy behind section 115—10.1 dictates that the substantive use of prior inconsistent statements made under oath in a criminal

setting serves to place such testimony "on [an] equal footing with the trial testimony, thus making it more persuasive in the eyes of the trier of fact." *People v. Wilson* (1986), 149 Ill. App. 3d 1075, 1079.

In *Wilson*, the defense counsel failed to apply section 115—10.1. As a result, the jury never received instructions directing them to use prior inconsistent statements in a substantive manner. Because the evidence was admitted only to impeach, the trial court improperly denied a request for an instruction on the lesser offense of reckless conduct which would have been justified if the prior testimony showing an absence of homicidal intent had been admitted substantively. To compound these problems, defense counsel waived closing argument and thus literally abandoned his final opportunity to persuade the jury that the defendant did not possess the requisite intent to kill. The court held that under these circumstances, where the defendant was deprived of having the essential element of his defense (the absence of intent) clearly explained and emphasized to the jury, and where defendant was improperly denied jury instructions of a lesser offense, the result of the proceeding was rendered unreliable and thus prejudicial to the defendant.

No such clear indications of prejudice or unreliability exist as a result of the errors in the present case. To begin with, defense counsel effectively elicited statements at trial which were similar to the previous inconsistent testimony. In so doing, he reduced the need to view the previous testimony substantively. The prior testimony concerned here was obtained at the prior trial of Calvin Pierce for his involvement in the murder of Carrie Duncan. At that trial, Dr. Blum testified that the mark on Duncan's face could have been created by a shoe or a boot. Subsequent investigation provided Dr. Blum with more evidence, and at Bennett's trial he testified that the patterned abrasions on Duncan's face were more consistent with the tread mark on the bottom of Bennett's shoes than with the soles of Pierce's boots.

Defendant argues she was denied the opportunity to explain to the jury the essential element of her defense, *i.e.*, that Pierce's boot could have been the source of the imprint on Duncan's face. We find that defense counsel's cross-examination of Dr. Blum brought into question the source of the abrasion on Duncan's face by eliciting admissions on the part of Dr. Blum that (1) a patterned weapon which had an arched shape could have caused the abrasion on Duncan's face, and (2) the measurement of the *top* of Pierce's right boot was more consistent with the measurement of the abra-

sion on Duncan's face than the bottom of Bennett's shoes. Defense counsel then demonstrated how the top of Pierce's boot could have caused the injury. Furthermore, defense counsel provided testimony that Bennett's left leg was weakened by missing cartilage, thus raising the possibility that she was too weak to perform the act.

Finally, defense counsel brought forth his own witness, a surgeon, who testified that the hard leather on a boot was more likely to cause the abrasions on Duncan's face than the soft plastic on Bennett's gym shoe. In addition, during his closing arguments, defense counsel highlighted the inconsistencies of Blum's testimony by comparing Blum's previous testimony that the abrasion could have been caused by a shoe or a boot with his recent testimony that the measurement of the abrasion was more consistent with the top of Pierce's boot.

In light of the attention defense counsel gave to this element of defendant's defense, we cannot say that the failure to tender the appropriate jury instruction prejudiced the trial or rendered its outcome unfair. Defense counsel called a strong witness to rebut Dr. Blum's testimony, defense counsel effectively cross-examined Dr. Blum by casting some doubt as to the reliability of Dr. Blum's testimony, and defense counsel presented a closing argument which pointed out apparent inconsistencies in Blum's testimony. The court in *Wilson* reversed the defendant's conviction because trial counsel failed to recognize the substantive value of a prior statement and use it to explain an essential element of the defense, thus defeating the defendant's chance for a conviction on a lesser offense. (*Wilson*, 149 Ill. App. 3d 1075.) No such injustice occurred here. The facts above show that defense counsel recognized the substantive value of the prior statement, used it for impeachment, and buttressed his reasoning by providing a credible witness who testified that the essential element of "knowingly caused harm" was not present by stating that Pierce's boot caused the harm, not Bennett's gym shoe. Therefore, we hold that the failure to tender instructions regarding the substantive use of the prior testimony was harmless error. We have held this finding proper where it does not appear to be a reasonable probability that the outcome would have been affected had the evidence been properly allowed as substantive. *People v. Broadnax* (1988), 177 Ill. App. 3d 818, 835.

Defendant next argues that the cumulative and prejudicial nature of slides, photographs, body charts and videotape of the victim requires a remand for a new trial. However, the only issue properly preserved for appeal was whether the trial court commit-

ted error in allowing gruesome photos to be presented to the jury in the form of overhead projection slides when the State had other means of presenting the same photographs to the jury. Therefore, the other issues regarding photographs, body charts and videotape are waived. (*People v. Bouchard* (1989), 180 Ill. App. 3d 26, 32.) In *Bouchard*, we held that a defendant must object to an error at trial and raise it with specificity in a post-trial motion for a new trial in order to preserve that issue for appeal. *Bouchard*, 180 Ill. App. 3d at 32.

■ In the present case, the trial judge allowed the slides into evidence because they were relevant to show the nature and extent of the injuries and because the screen projection made it easier for the jury to observe the photos as they were discussed during the testimony of the pathologist. The general rule is that relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial effect. (*People v. Seuffer* (1991), 144 Ill. 2d 482, 509.) This determination lies within the sound discretion of the trial judge, and it will not be overturned on appeal absent an abuse of discretion. *People v. Seuffer*, 144 Ill. 2d at 509.

We do not believe the trial judge abused his discretion in allowing the prosecution to introduce the photographic slides into evidence. The nature of the wounds inflicted was of central concern in this case. The placement of the body, the extent of the injuries and the type of injuries inflicted were all germane to the question of who caused the injuries to Duncan. Therefore, the trial judge's decision that the overhead slides would facilitate the presentation of this evidence was appropriate and not an abuse of discretion.

Defendant next argues that the trial judge relied upon improper factors in aggravation at the sentencing phase of her trial. We agree.

■ Among the aggravating factors the trial court noted were defendant's unemployment, defendant's problems with alcohol, and the age and death of the victim. We find that these are improper factors to rely upon in aggravation of defendant's sentence in this case.

First, the mere fact of unemployment is not a proper factor in aggravation, because many persons are unemployed for various reasons. (*People v. Birge* (1985), 137 Ill. App. 3d 781, 792.) Second, alcoholism has traditionally been considered as a factor in mitigation rather than aggravation. (*People v. Hayes* (1988), 173 Ill. App. 3d 1043, 1052; *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 889.) Third, the court should not have considered the death of the victim

as a factor in aggravation when sentencing a defendant for murder. (*People v. Conover* (1981), 84 Ill. 2d 400, 404.) Likewise, the court should not have considered the age of the victim as an aggravating sentencing factor for a felony murder predicated upon an aggravated battery resulting from harm caused to a person 60 years of age or older. Absent a clear legislative intent, a fact implicit in the offense of which the defendant has been convicted cannot be used as an aggravating factor in sentencing. (*People v. Ferguson* (1989), 132 Ill. 2d 86, 97.) In *Ferguson*, the court held that the age of the victim should not be considered as an aggravating sentencing factor where the underlying offense, sexual assault on a minor, has already been enhanced based on the age of the victim. (*Ferguson*, 132 Ill. 2d at 98.) We hold this same principle applies here. The legislature already elevated battery to aggravated battery when harm is caused to an individual 60 years of age or older. Therefore, the age of the victim should not be relied upon in aggravation when sentencing for this particular offense. However, because we will vacate the conviction of the felony murder count predicated upon harm caused to a person 60 years of age or older, reliance upon the age of the victim in sentencing no longer continues to be an improper sentencing factor.

We also note that the trial court failed to place any primary or overriding importance on a legitimate aggravating factor. Therefore, we are unable to determine the weight given to the improperly considered factors, and we must remand the cause for resentencing. *People v. Bourke* (1983), 96 Ill. 2d 327, 332.

■ Finally, defendant argues that she was improperly convicted of and sentenced for committing two crimes where the facts show only one criminal act. We agree. We consider the issue even in the absence of proper preservation because an error in sentencing can affect defendant's fundamental right to liberty and, thus, amount to plain error. *People v. Martin* (1988), 119 Ill. 2d 453, 458.

The general rule is that when there is one person murdered, there can only be one conviction. (*People v. Mack* (1984), 105 Ill. 2d 103, 136-37.) Convictions of more than one offense cannot be carved from the same physical act. (*People v. Szabo* (1983), 94 Ill. 2d 327, 350.) The present case involves two convictions of felony murder where there is only one victim. Therefore, one conviction must be vacated.

When multiple convictions are had for offenses arising out of a single act, sentence shall be imposed on the most serious offense. (*Mack*, 105 Ill. 2d at 137.) However, because the sentences here are

both based upon convictions of first degree murder, they are equal in length and are of no assistance in determining which is the most serious offense. Furthermore, neither conviction has a more culpable mental state than the other. (*Mack*, 105 Ill. 2d at 137.) The central difference between the two felony murder charges here is that one of the charges involves "bodily harm" to an individual and is elevated to the level of an aggravated battery because that harm is inflicted upon a person 60 years of age or older, whereas the other felony murder charge is based upon the infliction of "great bodily harm" to any individual. We view the latter as being more serious because it involves a greater degree of bodily harm. For these reasons, the defendant's conviction of and sentence for aggravated battery on an individual 60 years of age or older are vacated. See *Mack*, 105 Ill. 2d at 137 (where the single act/single crime rule is violated, both the offending conviction and its sentence are vacated).

We affirm in part, vacate in part, and remand the cause for resentencing.

Affirmed in part; vacated in part and remanded.

DUNN and NICKELS, JJ., concur.