693 N.E.2d 869 (1998)
295 Ill. App.3d 527
230 Ill.Dec. 391
In re A.R., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
A.R., Respondent-Appellant).
No. 1-96-3305.
Appellate Court of Illinois, First District, Fourth Division.
March 12, 1998.
*871 Rita A. Fry, Public Defender, County of Cook, Chicago (Karen M. Florek, of counsel), for Respondent-Appellant.
Richard A. Devine, State's Attorney, County of Cook, Chicago (Renee Goldfarb, Joan F. Frazier and Deborah Menas, of counsel), for Petitioner-Appellee.

MODIFIED ON DENIAL OF REHEARING
Presiding Justice CERDA delivered the opinion of the court:
Respondent, 15-year-old A.R., was found delinquent on the basis of two counts of aggravated battery (720 ILCS 5/12-4 (West 1994)) and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 1994)). He was sentenced to five years' probation. On appeal, respondent asserts that (1) he was not proven guilty beyond a reasonable doubt; and (2) he received ineffective assistance of counsel. For the following reasons, we vacate *872 the conviction and remand this cause for further proceedings.
Javier Perez testified that he went to a gangway at 72nd and Washtenaw Streets, Chicago, to see Cory Ellis, on April 2, 1996. When he arrived, four men, including respondent and Cory Ellis, were present. Five to ten minutes later, while Perez was talking with Ellis, one of the men said something like "what is up," pulled a gun from his pocket, and shot Perez in his side. Respondent was standing next to the shooter. After being shot, Perez fell to the ground, then dragged himself to the front yard, where a passerby helped him. As a result of the gunshot wound, Perez suffered a spinal cord injury, which left him paralyzed.
Cory Ellis testified that respondent's brother, Kenneth Robinson, called him several times on April 2, 1996, to buy marijuana from him. When Ellis went to a house at 72nd and Washtenaw Streets at about 6 p.m. for a pre-arranged meeting with Robinson, Robinson and respondent accompanied Ellis to the backyard. Robinson was looking at the marijuana when Ellis's friend, Perez, walked toward them. Ellis told Robinson to hurry up, but Robinson seemed to be stalling. As Perez walked down the gangway, he told Ellis he would wait for him in the front. At that point, Robinson took a gun from his pocket and shot Perez once. At the time of the shooting, respondent was behind Robinson, watching.
Chicago police detective Roland Paulintsky testified that he investigated the shooting. After going to the hospital where Perez was being treated, Paulintsky went to the scene of the shooting. In the gangway, he saw blood splatters and a shell casing. He then went into the house and spoke with respondent. Respondent's younger brother and stepfather were also in the house. After speaking with respondent's stepfather, Paulintsky advised respondent of his Miranda rights and took him to the police station. After respondent gave an oral confession at the police station, Paulintsky contacted a youth officer.
When respondent's biological father arrived, respondent repeated his confession in front of his father, Chicago police youth officer Cheryl Guratowski, Detective Paulintsky, and assistant State's Attorney Montel Gayles. In his statement, respondent said that he overheard his brother and cousin talking about buying marijuana from Ellis on April 2, 1996. His brother Kenneth said that they would stick-up Ellis and take the marijuana, which Kenneth would sell. His brother planned to keep the money. Respondent heard Kenneth call Ellis three or four times and inquire about buying a pound and a half of marijuana.
Before Ellis arrived around 6 p.m., respondent warned Kenneth that it was not a good idea to rob Ellis because something might happen to their house or their family. Kenneth agreed, but then told respondent that when Ellis arrived, he should act like he did not know Kenneth and should do everything that Kenneth told the others to do.
When Ellis came to the house, Kenneth told respondent to come outside with him and Ellis. Respondent followed the two men into the backyard. Ten seconds later, Perez arrived. After Ellis took three plastic baggies filled with marijuana out of a backpack, Kenneth complained that Ellis had shorted him the last time. After Perez denied that he had shorted Kenneth earlier, Kenneth turned his back and looked at the marijuana. He then turned back toward the men and pulled a gun from his pocket. Perez tried to run, but Kenneth told him to stay. Kenneth hit Ellis in the mouth with the gun, then told everyone to get on ground. When no one got on the ground, Kenneth shot Perez in the chest. Ellis and Kenneth ran, but respondent stayed to help Perez. He returned home until the police arrived later that evening.
After closing arguments, the trial court found respondent guilty of two counts of aggravated battery and aggravated discharge of a firearm based on his written statement. The court found that both Ellis and Perez were not credible witnesses. After being found delinquent, respondent was sentenced to five years' probation.
The first issue is whether defendant received ineffective assistance of counsel because his attorney failed to file a motion to *873 quash his arrest and suppress evidence or to refile a motion to suppress his statements.
In order to establish ineffective assistance of counsel, a defendant generally must prove that his counsel was deficient and that he was prejudiced by that deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); People v. Albanese, 104 Ill.2d 504, 525, 85 Ill.Dec. 441, 473 N.E.2d 1246 (1984). To show prejudice, the defendant must demonstrate that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In making a determination of prejudice, the court must examine the totality of the circumstances. Strickland, 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698.
To prevail on a claim that his trial counsel was ineffective for failing to file a motion to quash arrest or suppress statements, the defendant must show that there was a reasonable probability that the motion would have been granted and that the outcome of the trial would have been different if the arrest had been quashed or the statements suppressed. People v. Morris, 229 Ill.App.3d 144, 157, 171 Ill.Dec. 112, 593 N.E.2d 932 (1992); People v. Bennett, 222 Ill.App.3d 188, 201, 164 Ill.Dec. 426, 582 N.E.2d 1370 (1992); People v. Mendez, 221 Ill.App.3d 868, 873, 164 Ill.Dec. 321, 582 N.E.2d 1265 (1991).
Defendant argues that he was arrested without probable cause and that his statements were involuntary. In determining whether an arrest has occurred, the court must make an objective determination whether a reasonable person, innocent of any crime, would have considered himself or herself arrested or free to leave. Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565, 572 (1988); People v. Holveck, 141 Ill.2d 84, 95, 152 Ill.Dec. 237, 565 N.E.2d 919 (1990). The factors to consider include the time, place, length, mood, and mode of the interrogation; the number of police officers present; any indicia of formal arrest or evidence of restraint; the intention of the officers; the extent of the officers' knowledge; the focus of the officers' investigation (People v. Brown, 136 Ill.2d 116, 124-25, 143 Ill.Dec. 281, 554 N.E.2d 216 (1990)); the subjective belief of the detainee concerning his arrest status (People v. Booker, 209 Ill.App.3d 384, 393, 154 Ill.Dec. 211, 568 N.E.2d 211 (1991)); any statement or non-verbal conduct by the police indicating that the detainee was not free to leave (People v. Langlo, 153 Ill.App.3d 636, 641-42, 106 Ill.Dec. 547, 505 N.E.2d 1338 (1987)); and whether the detainee was told that he was free to leave or that he was under arrest. Holveck, 141 Ill.2d at 95, 152 Ill.Dec. 237, 565 N.E.2d 919; People v. Reynolds, 257 Ill. App.3d 792, 799, 196 Ill.Dec. 14, 629 N.E.2d 559 (1994). The police officer's subjective belief that the detainee was free to leave is not determinative if it was not communicated to the defendant. People v. Stofer, 180 Ill. App.3d 158, 168, 128 Ill.Dec. 682, 534 N.E.2d 1287 (1989). No one factor is dispositive. A determination will vary with all of the circumstances surrounding the detention in each case. Chesternut, 486 U.S. at 572, 108 S.Ct. at 1978, 100 L.Ed.2d at 571.
Whether or not probable cause for an arrest exists depends on the totality of the facts and circumstances known to the officers when the arrest was made. People v. James, 118 Ill.2d 214, 223, 113 Ill.Dec. 86, 514 N.E.2d 998 (1987). Probable cause "requires more than mere suspicion, but it does not require the arresting officers to have in their hands evidence sufficient to convict the defendant." In re D.G., 144 Ill.2d at 409, 163 Ill.Dec. 494, 581 N.E.2d 648.
For a confession to be admissible at trial, it must be free, voluntary, and not obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); People v. Thomas, 137 Ill.2d 500, 516, 148 Ill.Dec. 751, 561 N.E.2d 57 (1990). The test for the voluntariness of a confession is whether, under the totality of the circumstances, *874 the statement was made freely, without compulsion or inducement, with consideration given to the characteristics of the accused and the details of the interrogation. Thomas, 137 Ill.2d at 516, 148 Ill.Dec. 751, 561 N.E.2d 57.
Under the Juvenile Court Act (705 ILCS 405/5-6 (West 1992)), a law enforcement officer who takes a minor into custody shall immediately make a reasonable attempt to notify the parent and shall without unnecessary delay take the minor to the nearest juvenile officer. The purpose of the "notice" requirement is to permit, where possible, a parent to confer and counsel with the juvenile before interrogation and confession. People v. Montanez, 273 Ill.App.3d 844, 210 Ill.Dec. 295, 652 N.E.2d 1271 (1995).
Factors to be considered in determining whether the confession was voluntary include the defendant's age, education, intelligence, experience and physical condition; the length and intensity of the interrogation; the existence of any threats, promises, or physical coercion; whether the confession was induced by police deception; and whether defendant was informed of his constitutional rights. People v. Martin, 102 Ill.2d 412, 427, 80 Ill.Dec. 776, 466 N.E.2d 228 (1984); People v. MacFarland, 228 Ill. App.3d 107, 117, 170 Ill.Dec. 35, 592 N.E.2d 471 (1992). When a juvenile's confession is at issue, additional factors come into play, including the time of day and the presence of a parent or other adult interested in the juvenile's welfare. People v. Brown, 235 Ill. App.3d 479, 490, 176 Ill.Dec. 492, 601 N.E.2d 1190 (1992).
Although the presence of a youth officer does not per se make a juvenile's confession voluntary, it is a significant factor. In re Lashun H., 284 Ill.App.3d 545, 557, 219 Ill.Dec. 823, 672 N.E.2d 331 (1996). The failure to have a juvenile officer present is material to determining the voluntariness of defendant's statement. People v. Knox, 186 Ill.App.3d 808, 815, 134 Ill.Dec. 564, 542 N.E.2d 910 (1989). The presence or absence of a parent is also a factor in evaluating the voluntary nature of a confession. Montanez, 273 Ill.App.3d at 854, 210 Ill.Dec. 295, 652 N.E.2d 1271; In re J.O., 231 Ill.App.3d 853, 855, 173 Ill.Dec. 406, 596 N.E.2d 1285 (1992). The relevant inquiry is whether the absence of an adult interested in the defendant's welfare contributed to the coercive circumstances surrounding the interview, not whether contact with a parent was denied. Knox, 186 Ill.App.3d at 814, 134 Ill.Dec. 564, 542 N.E.2d 910.
The following cases are helpful in deciding whether the confession in this case was voluntary. In Montanez, 273 Ill.App.3d 844, 210 Ill.Dec. 295, 652 N.E.2d 1271, the confession was involuntary. The court stated:
"`Notice' here must be understood to have some purpose, namely to allow, where possible, the concerned adult to confer and counsel with the juvenile before interrogation and confession. Yes, an attempt was made to contact a youth officer before the statement was taken; but the interrogation went forward anyway within minutes. And yes, the parent here was `notified' but in the same breath she was told she could not see her child until called. These circumstances demonstrate the intended fulfillment of notice here was simply a charade." Montanez, 273 Ill.App.3d at 850, 210 Ill.Dec. 295, 652 N.E.2d 1271.
Montanez further held that the failure to have the opportunity to confer was material in determining the voluntariness of a minor defendant's statement. 273 Ill.App.3d at 852, 210 Ill.Dec. 295, 652 N.E.2d 1271.
In In re J.O., 231 Ill.App.3d 853, 173 Ill. Dec. 406, 596 N.E.2d 1285, the parents of a minor respondent went to the police station, but did not ask to talk to the respondent. As a result, they were not taken to see him. Instead, they waited in the police station lobby while the respondent was being questioned. The court stated:
"A juvenile's age and the fact that the interrogation occurred in the middle of the night may properly be considered in evaluating the voluntary nature of a confession. [Citation] Additionally, if parents have indicated an interest by their presence, then they should be allowed to confer with their children before any questioning occurs. [Citation] The presence or absence of a parent is a factor in evaluating the voluntary *875 nature of a confession under the totality of the circumstances test. [Citation] Accordingly, because the trial court's ruling was based on the totality of the circumstances and the court considered proper factors in making its determination, we affirm its granting of the motion to suppress." In re J.O., 231 Ill.App.3d at 855, 173 Ill.Dec. 406, 596 N.E.2d 1285.
In People v. R.B., 232 Ill.App.3d 583, 173 Ill.Dec. 905, 597 N.E.2d 879 (1992), the 15-year-old defendant maintained that his statement was involuntary. The court explained in deciding the case:
"This court has stated that the failure to telephone a juvenile's parents, or the absence of a parent during questioning, is a factor in determining voluntariness, but is not determinative of whether defendant's confession should be suppressed. [Citation]
However, where the State failed to take appropriate steps to ensure that a juvenile defendant had an opportunity to confer with an interested adult, either a parent or a youth officer, this court has held that the police conduct rendered his confession inadmissible. [Citation] R.B., 232 Ill.App.3d at 593, 173 Ill.Dec. 905, 597 N.E.2d 879.
The court then held that the confession was involuntary.
In this case, the totality of the circumstances suggests that respondent was arrested before he gave an oral confession, which was likely involuntary since no adult interested in his welfare was present. The defendant was given his Miranda rights and taken into custody to the police station by Officer Paulintsky. At the police station, he gave an oral confession. There was no parent present and the police did not contact a youth officer until after respondent gave his confession. This case is similar to the recent case of People v. Fuller, 292 Ill.App.3d 651, 226 Ill.Dec. 657, 686 N.E.2d 6 (1997), in which this court ruled that the minor defendant's first confession was involuntary because it was given without a parent present and before the police contacted a youth officer.
It is disturbing that respondent was questioned without an interested adult being present and before the police even contacted the youth officer. Receiving an incriminating statement by a juvenile in the absence of counsel is a sensitive concern requiring great care to assure that the juvenile's confession was neither coerced, suggested, nor the product of fright or despair. People v. Prude, 66 Ill.2d 470, 476, 6 Ill.Dec. 689, 363 N.E.2d 371 (1977). As a result, courts scrutinize custodial statements by juvenile suspects with particular care, given that the potential for coercion is enhanced. Brown, 235 Ill.App.3d at 490, 176 Ill.Dec. 492, 601 N.E.2d 1190.
We do not know if the police asked respondent's step-father to come to the police station or contacted his biological parents before questioning him. We do know, however, that his biological father arrived after he gave his oral confession and that the youth officer was not contacted until after he had given that confession. While the absence of a parent or youth officer does not per se make a juvenile's confession involuntary, the police must make every reasonable effort to have a parent, youth officer, or other interested adult present before they question a juvenile.
Nevertheless, we do not have to decide whether the arrest was illegal or the confession involuntary. The issue in this case is whether respondent received ineffective assistance of counsel because his attorney failed to challenge the legality of the arrest or voluntariness of his confession. Based on the foregoing, we find that there was enough evidence to suggest that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Because we conclude that respondent received ineffective assistance of counsel, we are vacating his conviction and remanding this cause to the circuit court for a hearing on his motion to quash arrest and suppress statements. If the circuit court grants the motion, a new trial is ordered. If, however, the circuit court denies the motion, the conviction is affirmed.
*876 In light of that decision, double jeopardy requires that we address respondent's challenge to the sufficiency of the evidence. People v. Digirolamo, 179 Ill.2d 24, 42, 227 Ill. Dec. 779, 688 N.E.2d 116 (1997).
Based on the evidence, particularly respondent's confession, we find that there was sufficient evidence to convict him of aggravated battery and aggravated discharge of a firearm. A defendant is accountable for acts performed by another if he shared a common criminal plan or purpose. People v. Taylor, 164 Ill.2d 131, 140-41, 207 Ill.Dec. 1, 646 N.E.2d 567 (1995). The common-design rule provides that where two or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts. In re W.C., 167 Ill.2d 307, 337, 212 Ill.Dec. 563, 657 N.E.2d 908 (1995). The common design can be inferred from the circumstances surrounding the commission of the unlawful conduct. Taylor, 164 Ill.2d at 141, 207 Ill.Dec. 1, 646 N.E.2d 567. Proof of the common purpose or design need not be supported by words of agreement, but may be drawn from the circumstances surrounding the commission of the unlawful conduct. People v. Furby, 138 Ill.2d 434, 456, 150 Ill.Dec. 534, 563 N.E.2d 421 (1990); People v. Reid, 136 Ill.2d 27, 61, 62, 143 Ill.Dec. 239, 554 N.E.2d 174 (1990). Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with the knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another. In re W.C., 167 Ill.2d at 338, 212 Ill.Dec. 563, 657 N.E.2d 908; Taylor, 164 Ill.2d at 141, 207 Ill.Dec. 1, 646 N.E.2d 567. Accountability may be established through a person's knowledge of and participation in the criminal scheme, even though there is no evidence that he directly participated in the criminal act itself. In re W.C., 167 Ill.2d at 338, 212 Ill.Dec. 563, 657 N.E.2d 908.
Because we conclude that respondent received ineffective assistance of counsel, we are vacating his conviction and remanding this cause to the circuit court for a hearing on his motion to quash arrest and suppress statements. If the circuit court grants the motion, a new trial is ordered. If, however, the circuit denies the motion, the conviction is affirmed.
Vacated and remanded with instructions.
McNAMARA and BURKE, JJ., concur.